# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
CENTER FOR BIOLOGICAL DIVERSITY,          )
)
        Plaintiff,          )
)
        v.          )      Case No. 17-cv-1037 (EGS)
)
U.S. ARMY CORPS OF ENGINEERS and          )
U.S. CUSTOMS AND BORDER PROTECTION,          )
)
        Defendants.          )
_____)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants U.S. Army

Corps of Engineers ("USACE") and U.S. Customs and Border Protection ("CBP") (collectively,

the "Defendants"), by and through undersigned counsel, respectfully move the Court to enter

summary judgment in their favor in this action brought under the Freedom of Information Act,

5 U.S.C. § 552 because there is no genuine issue as to any material fact, and Defendants are

entitled to judgment as a matter of law.  In support of this motion, Defendants respectfully refer

the Court to the accompanying Memorandum of Points and Authorities, Statement of Material

Facts Not in Genuine Dispute, and Declarations of Damon Roberts, previously Center

[Remainder of page intentionally left blank.]

Counsel for USACE, Humphrey Engineer Center Support Activity, and Patrick Howard, Branch

Chief, FOIA Division, Office of the Commissioner, CBP.

Dated: September 13, 2018

Respectfully submitted,

JESSIE K. LIU, D.C. Bar # 472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By: */s/ Melanie D. Hendry*
Melanie D. Hendry
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2510
melanie.hendry2@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CENTER FOR BIOLOGICAL DIVERSITY,        )
                                        )
            Plaintiff,                  )
                                        )
            v.                          )          Case No. 17-cv-1037 (EGS)
                                        )
U.S. ARMY CORPS OF ENGINEERS and        )
U.S. CUSTOMS AND BORDER PROTECTION,     )
                                        )
            Defendants.                 )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case arises under the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA"), and

pertains to FOIA requests submitted by Plaintiff, Center for Biological Diversity ("Plaintiff"), to

Defendants, United States Army Corps of Engineers ("USACE") and United States Customs and

Border Protection ("CBP") (collectively, "Defendants") seeking "all records . . . that reference

walls, barriers, and/or other physical constructions along the U.S.-Mexico border and/or U.S.-

Canada border, for purposes of the Presidential transition process, created for and/or provided to

brief members of the Presidential Transition Team and/or their representatives."  Declaration of

Patrick Howard (the "Howard Decl.") at Ex. B; Declaration of Damon Roberts (the "Roberts

Decl.") at Ex. A.

As detailed in the Howard and Roberts Declarations, CBP and USACE performed

multiple searches which were reasonably calculated to locate responsive records.  Howard

Decl. ¶¶ 16-25; Roberts Decl. ¶¶ 3-6.  Defendants have produced all non-exempt responsive

records to Plaintiff after properly withholding only such information that is subject to a FOIA

exemption, including information that was withheld pursuant to FOIA Exemptions 4, 5, 6, and 7.[1]

As demonstrated below, there is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background is fully set forth in Defendants' Statement of Material Facts Not in Genuine Dispute, the Howard Declaration, and the Roberts Declaration (filed contemporaneously with this motion) and incorporated by reference herein.

## LEGAL STANDARDS

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. U.S. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)). A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material

---

[1] As detailed in the Howard Declaration, upon further review of its withholdings, CBP discovered that some of the material it initially withheld pursuant to FOIA Exemption 3 is not, in fact, subject to Exemption 3. However, as discussed below, certain of that material has been properly withheld pursuant to other applicable exemptions. Howard Decl. ¶¶ 28-32.

facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See, e.g., Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See, e.g., McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Santana v. Dep't of Justice*, 828 F. Supp. 2d 204, 208 (D.D.C. 2011); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004).

## ARGUMENT

### I. DEFENDANTS PERFORMED REASONABLE AND ADEQUATE SEARCHES FOR RESPONSIVE RECORDS

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011). A reasonable search is one that covers those locations where responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) ("[T]he agency's search for records need not be exhaustive, but merely reasonable. The proper inquiry is not whether there might exist

additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents."); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured."). A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68 (noting that an agency need not search every record system, but only those which it believes are likely to hold responsive records). Accordingly, for a court evaluating an agency's search, the fundamental question is "whether the search for those documents was adequate," not "whether there might exist any other documents responsive to the request." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Weisberg*, 705 F.2d at 1351 ("[T]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.") (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). The court's inquiry, therefore, should focus on the method of the search, not its results. *See, e.g., Bigwood*, 132 F. Supp. 3d at 135 (explaining that the adequacy of the search is judged by appropriateness of the methods used to carry out the search rather than by fruits of the search); *Boggs v. United States,* 987 F. Supp. 11, 20 (D.D.C. 1997) (noting that the court's role is to determine the reasonableness of the search, "not whether the fruits of the search met plaintiff's aspirations").

The agency bears the burden of demonstrating the adequacy of its search by providing a declaration setting forth the search terms and type of search performed, "and averring that all files likely to contain responsive materials . . . were searched." *Elliott v. Nat'l Archives & Records Admin.*, Civ. A. No. 06-1246 (JDB), 2006 WL 3783409, at *2 (D.D.C. Dec. 21, 2006)

(quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003)).

"Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (internal quotation marks omitted); *West v. Spellings*, 539 F. Supp. 2d 55, 60 (D.D.C. 2008).  Once an agency has met its burden of demonstrating the adequacy of its search, the agency's position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Elliott*, 2006 WL 3783409, at *3 (explaining that to satisfy evidentiary burden, the plaintiff "must present evidence rebutting the agency's initial showing of a good faith search").  Speculative or hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search.  *See, e.g., Lasko v. U.S. Dep't of Justice*, Appeal No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010) (per curiam) (explaining that the adequacy of the search is not undermined by mere speculation that additional documents might exist); *Oglesby*, 920 F.2d at 67 n.13; *Elliott*, 2006 WL 3783409, at *3 (noting that speculative claims about the existence of other documents cannot rebut the presumption of good faith accorded to agency declarations).

Here, the Howard and Roberts Declarations demonstrate that the search methods employed by USACE and CBP were reasonably calculated to uncover records responsive to the subject FOIA requests.

### A.  USACE's Search

As Damon Roberts explains in his declaration, after reviewing Plaintiff's FOIA request, he determined that Steven Roberts, the Project Manager in USACE Headquarters responsible for

working with CBP, would have any documents responsive to the FOIA request.   Roberts

Decl. ¶ 4.  He explains:

> I determined that Mr. Roberts would have a copy of all responsive
> documents located at the USACE Headquarters, due to his position
> as Project Manager.   Mr. Roberts stored all of his documents
> related to the construction of a physical barrier in an electronic
> folder on his network drive.   He stored all of his electronic
> correspondence related to the construction of a physical barrier in a
> specific Outlook folder.  Mr. Roberts searched the aforementioned
> electronic folder on his network drive and the relevant Outlook
> folder for all documents responsive to the FOIA request.   Mr.
> Roberts also searched his physical paper files for responsive
> documents.   On April 18, 2017, Mr. Roberts provided me all
> records within his possession related the construction of a physical
> barrier along the U.S.-Mexico border.

*Id*.  Also, to ensure that all responsive emails to or from USACE leadership were located,

USACE IT personnel electronically searched the email account of USACE's Commanding

General, Lieutenant General Todd T. Semonite, for any emails including the terms "border wall"

or "border fence."  *Id*. at ¶ 6.

USACE reviewed the documents located in its searches to determine whether they were,

in fact, responsive to Plaintiff's FOIA request, and to evaluate whether they contained

information subject to a FOIA exemption.   *Id*. at ¶ 5.   After consultation with several other

federal agencies, including CBP, the Office of the Administrative Assistant to the Secretary of

the Army, the Office of the Secretary of Defense, and USACE's Southwest Division, USACE

completed the processing of Plaintiff's FOIA request, and released to Plaintiff all responsive,

non-exempt records.  *Id*. at ¶¶ 7-8.[2]

---

[2] Although USACE initially determined and reported to Plaintiff that it was going to refer certain documents to other agencies for processing and release to Plaintiff, USACE ultimately decided to consult with those agencies and include the documents in its own production.  Roberts Decl. ¶ 5.

**B. CBP's Search**

As Patrick Howard explains in his declaration, after reviewing Plaintiff's FOIA request, CBP's FOIA Division determined that the Office of Facilities and Asset Management ("OFAM"), U.S. Border Patrol ("USBP"), and the Policy Directorate ("OPD") were the offices within CBP that were most likely to have responsive records.[3]  Howard Decl. ¶ 16.  The FOIA Division tasked those offices with searching paper and electronic files (including emails) for responsive records.  *Id.* at ¶ 20.  It determined that the appropriate time period for the search was November 9, 2016, through February 28, 2017.  As explained in the Howard Declaration: "This time period is from the date after the Presidential election until one month following the swearing in of President Trump.  This time period would most likely have been the time that any communications or drafts would have been prepared for the Presidential Transition Team.  As such, this time period was reasonably calculated to locate the records requested by Plaintiff."  *Id.* at ¶ 21.

OFAM performed its search using the terms "Transition + Wall," "Transition + Barrier," "Transition + Border," "Transition," and "Transition Team."  *Id.* at ¶ 22.  USBP searched the "shared drive folder that was specifically dedicated to the Presidential Transition Team and located all records relating to or referencing walls, barriers, and/or other physical construction along the U.S.-Mexico border and/or U.S.-Canada border."  *Id.* at ¶ 23.  OPD's search was performed using two methods.  To locate responsive emails, CBP's Office of Information and

---

[3] OFAM "is the office within CBP responsible for managing the agency's large, complex, and diverse facilities and tactical infrastructure portfolio. . . ."  Howard Decl. ¶ 17.  USBP "is the primary federal law enforcement organization responsible for preventing the entry and illicit movement of people and contraband between official CBP ports of entry."  *Id.* at ¶ 18.  OPD "is the designated lead office on behalf of the Commissioner and Deputy Commissioner in guiding CBP's overall policy development and implementation and coordination with DHS and other governmental agencies for matters that are of a significant, cross-cutting, and/or agency-wide nature which are expected to have an impact on CBP policies operations and procedures."  *Id.* at ¶ 19.  OPD was "responsible for communications between the Presidential Transition Team and CBP."  *Id.* at ¶ 24.

Technology searched the email of members of OPD using the following terms: "Presidential Transition" and "Mexican Border" plus "wall" or "barrier" or "physical construction"; "Presidential Transition" and "U.S.-Mexico Border" plus "wall" or "barrier" or "physical construction"; and "Presidential Transition" and "U.S.–Canada Border" plus "wall" or "barrier" or "physical construction."  *Id*. at ¶ 24.  Additionally, OPD members searched their shared drives and emails in Microsoft Outlook that were on their work computers using the search terms "wall," "barrier," "construction," "physical," "Mexico," "Canada," and "border."  *Id*.

The records located through the multiple searches were provided to the FOIA Division and reviewed to identify exempt material.  *Id*. at ¶ 25.  All reasonably segregable, non-exempt portions were produced to Plaintiff.  *Id*. at ¶ 56.

## II.    FOIA EXEMPTIONS 4, 5, 6, AND 7 WERE PROPERLY INVOKED

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements.  *Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994).  FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions.  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

USACE and CBP carefully reviewed the responsive records and produced to Plaintiff all reasonably segregable, non-exempt material.  Howard Decl. ¶ 56; Roberts Decl. ¶ 16.  As

detailed below and in the accompanying declarations and *Vaughn* indices, exempt information was properly withheld pursuant to FOIA Exemptions 4, 5, 6, 7(C), and 7(E).

## A. CBP Properly Applied FOIA Exemption 4

Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). It is intended to protect the confidentiality interests not only of the government, but also of those who submit information to the government. *Nat'l Park & Conservation Ass'n v. Morton*, 498 F.2d 765, 767-70 (D.C. Cir. 1974) (concluding that the legislative history of the FOIA "firmly supports an inference that [Exemption 4] is intended for the benefit of persons who supply information as well as the agencies which gather it").

### *CBP Properly Protected Trade Secret Information*

In this Circuit, "trade secret" is defined as "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1288 (D.C. Cir. 1983). Trade secret protection has been recognized for product manufacturing and design information, and the withholding of such information pursuant to Exemption 4 has been upheld. *See, e.g.*, *Appleton v. FDA*, 451 F. Supp. 2d 129, 142 (D.D.C. 2006) (concluding product manufacturing information properly withheld); *Pac. Sky Supply, Inc. v. Dep't of the Air Force*, Civ. A. No. 86-2044, 1987 WL 25456, at *1 (D.D.C. Nov. 20, 1987) (concluding design drawings developed by private company were trade secrets and were properly withheld).

As detailed in the Howard Declaration and the *Vaughn* index, CBP withheld "contractor design drawings and specifications . . . provided to CBP in connection with the design of the

fence along the U.S. southern border. . . ." Howard Decl. ¶ 35; Ex. A. Howard further notes that "the designs bear markings which identify the drawings and specifications as proprietary." *Id*. at ¶ 35. These proprietary drawings and specifications are precisely the type of trade secret information that falls within Exemption 4. Therefore, they were properly withheld.

### CBP Properly Protected Cost and Price Information

When considering the applicability of Exemption 4, the terms, "commercial" and "financial" are given their ordinary meanings. *See Nat'l Ass'n of Homebuilders v. Norton,* 309 F.3d 26, 38 (D.C. Cir. 2002); *Pub. Citizen Health Research Grp.*, 704 F.2d at 1290. "Commercial" is defined broadly to include "records that reveal basic commercial operations or relate to income-producing aspects of a business" as well as situations where the "provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler LLP v. U.S. Dep't of Commerce,* 473 F.3d 312, 319 (D.C. Cir. 2006). "Person" includes an individual, partnership, corporation, association, or public or private organization. *See* 5 U.S.C. § 551(2).

The protection afforded documents withheld under Exemption 4 varies depending on whether the information is provided to the government agency voluntarily or involuntarily. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n* ("*Critical Mass II*"), 975 F.2d 871, 878-80 (D.C. Cir.1992) (*en banc*). Pricing information included in a government contract is provided involuntarily. *See*, *e.g.*, *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) (declaring that "when the government requires a private party to submit information as a condition of doing business with the government" the submission is deemed "required"); *Lepelletier v. FDIC*, 977 F. Supp. 456, 460 n.3 (D.D.C. 1997) ("Information is considered 'required' if any legal authority compels its submission, including informal mandates

that call for the submission of the information as a condition of doing business with the government."), *aff'd in part*, *rev'd in part & remanded on other grounds*, 164 F.3d 37 (D.C. Cir. 1999); *McDonnell Douglas Corp. v. NASA*, 895 F. Supp. 316, 318 (D.D.C. 1995) (explaining that "the price elements necessary to win a government contract are not voluntary").  Therefore, such information is considered confidential for purposes of Exemption 4 "if disclosure of the information is likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F. 2d 765, 770 (D.C. Cir. 1974).  "When determining whether Exemption 4 applies, actual harm does not need to be demonstrated; evidence supporting the existence of potential competitive injury or economic harm is enough for the exemption to apply." *Essex Electro Eng'rs, Inc. v. U.S. Sec'y of Army*, 686 F. Supp. 2d 91, 94 (D.D.C. 2010) (citing *Gulf & W. Indus., Inc. v. United States,* 615 F.2d 527, 530 (D.C. Cir. 1979)).

As outlined in the Howard Declaration:

> In this case, exemption (b)(4) was applied in Bates-numbered documents 0061-BW FOIA, 0062-BW FOIA, and 0063-BW FOIA.  Together the documents comprise a delivery order contract between CBP and The Boeing Company ("Boeing") to provide services in support of CBP's Fence Lab Project, under which CBP tested, evaluated, and selected border fence solutions to meet the agency's operational needs.  The unit costs and total price offered by Boeing for the associated services is redacted, as its disclosure could result in competitive harm to the contractor.

Howard Decl. ¶ 34.  This is precisely the type of confidential information protected by Exemption 4.  *See*, *e.g.*, *General Elec. Co. v. Dep't of Air Force*, 648 F. Supp. 2d 95, 105 (D.D.C. 2009) (pricing information confidential for purposes of Exemption 4).  Therefore, it was properly withheld.

11

**B.  Defendants Properly Applied FOIA Exemption 5**

Exemption 5 of FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   The Supreme Court has interpreted Exemption 5 as allowing an agency to withhold from the public documents that a private party could not discover in civil litigation with the agency.  *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).   Exemption 5, therefore, protects from disclosure documents that "fall within the ambit of a privilege" such that they would not be "routinely or normally" disclosed in civil discovery.  *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *FTC v. Grolier, Inc.*, 462 U.S. 19, 26-27 (1983); *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181 (D.C. Cir. 1987).   Thus, Exemption 5 allows an agency to invoke traditional civil discovery privileges, including the attorney-client privilege, attorney work-product privilege, and the executive deliberative process privilege, to justify the withholding of documents that are responsive to a FOIA request.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

FOIA Exemption 5 incorporates the traditional privilege accorded to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1997).   Unlike the attorney work-product privilege, which is also protected under Exemption 5, the attorney-client privilege is not limited to the context of litigation.  *See Elec. Privacy Info. Ctr.* v. *DHS*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005).   Moreover, although it fundamentally applies to facts divulged by a client to his attorney, this privilege also

encompasses any opinion given by an attorney to his client based upon, and thus reflecting, those facts. *See id*. (noting that the privilege protects attorney's advice based upon facts provided by the client).

The deliberative process privilege is also incorporated into FOIA Exemption 5. *NLRB*, 421 U.S. at 151. This privilege protects the "quality of agency decisions." *Id*. The content or nature of the document is the focus of the inquiry into the privilege as opposed to the manner in which the exemption is raised in a particular situation. *See Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990). The policy underlying this privilege is to encourage open, frank discussions of policy matters between government employees, consultants and other officials, to protect against premature disclosure of proposed policies before they become final, and to protect against public confusion by disclosing reasons and rationales that were not in fact the ultimate grounds for the agency's action. *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States*, 617 F.2d at 866.

To withhold a responsive document under the deliberative process privilege, the agency must demonstrate that the document is "both predecisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A communication is predecisional if "it was generated before the adoption of an agency policy," and it is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id*. The deliberative process privilege reflects Congress' judgment that public disclosure of predecisional, deliberative documents would inhibit "the full and frank exchange of ideas on legal policy matters" within an agency. *Mead Data Cent.*, 566 F.2d at 256. The Supreme Court

has commented that, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705 (1974).

As detailed below and in the accompanying declarations, Defendants properly protected information that is subject to the attorney client and deliberative process privileges and withheld such information pursuant to FOIA Exemption 5.

### 1.  USACE's Withholdings

USACE withheld from its release to Plaintiff records or portions of records that are subject to the deliberative process privilege.  Roberts Decl. ¶ 10; Ex. D.  As explained in the Roberts Declaration:

> Here, as detailed on the accompanying *Vaughn* index, exemption (b)(5) was used to withhold documents characterized as deliberative includ[ing] emails, draft documents, and communications between Department of Defense ("DoD") personnel regarding the infrastructure along our nation's borders. Because these portions reflect pre-decisional opinions and recommendations, they are deliberative and protected from disclosure.

*Id*.  Thus, as detailed in its accompanying *Vaughn* index, USACE protected deliberative, pre-decisional documents discussing matters including how USACE could provide inter-agency services and support to the Department of Homeland Security ("DHS") and CBP; media engagement; acquisition strategy; plans for project execution; and funding, resource, and legal considerations.  *Id*. at Ex. D.

### 2.  CBP's Withholdings

CBP also withheld documents subject to the deliberative process.  As Patrick Howard explains:

In this case, exemption (b)(5) was applied to pre-decisional/deliberative information concerning the agency's approach to implement law enforcement measures along the U.S.-Mexico border under programs and initiatives, such as the Secure Border Initiative Network ("SBI*net*") (a concept for providing fencing, communications systems, sensors, and operators as an approach to surveillance along the southwest border), the Integrated Fixed Tower ("IFT") Program (a surveillance program utilizing fixed surveillance towers along the Arizona border), and the Aerostat surveillance system (aircraft which monitor air and ground movement along the border), as well as the agency's potential plans for construction of new tactical border infrastructure as directed by President Trump. The redacted information includes the qualitative and quantitative metrics across which USBP identified law enforcement capability gaps, the results of tests and analyses of alternatives for potential law enforcement strategies, and recommendations to CBP leadership to inform acquisition and other decisions concerning the deployment of law enforcement strategies. Disclosure of such information could reasonably be expected to affect the agency's decision-making process in effecting presidential policy.

Howard Decl. ¶ 42.

Additionally, CBP withheld "information previously provided to USBP from CBP's Office of Chief [Counsel] ("OCC") for the purposes of providing legal advice, which was subsequently used in various briefing materials for CBP leadership." *Id*. at ¶ 44. Thus, this privileged information was also properly withheld pursuant to Exemption 5.

## C. Exemptions 6 and 7(C) Were Properly Applied

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't Accountability*

*Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).  Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

In assessing the applicability of Exemptions 6 and 7(C), courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier*, 164 F.3d at 46; *ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (noting the balance of privacy and public interests when assessing applicability of Exemption 7(C)).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def.*, 510 U.S. at 497) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."  *Beck*, 997 F.2d at 1492.

### 1.  USACE's Exemption 6 Withholdings

USACE withheld, pursuant to Exemption 6, the names and contact information of active duty and civilian Department of Defense ("DoD") personnel, including, in some instances, personal phone numbers and personal email addresses.  Roberts Decl. ¶¶12-13; Ex. D.  As explained in the Robert's Declaration, "[t]he individuals' privacy and security interest in their

personally identifying information outweighs the public interest in knowing precisely which DoD personnel were included on the emails and the work contact information for those personnel." *Id*. at ¶ 12. Roberts also highlights the reasonable expectation of privacy the subject DoD personnel have in their personal phone numbers and email addresses, which could potentially be used to contact them outside of the workplace. *Id*. at 13. Consequently, such information was properly withheld pursuant to FOIA Exemption 6.

### 2. CBP's Withholdings

Here, CBP redacted personal information such as the names, signatures, and contact information of lower-level government employees and third-parties pursuant to Exemption 6. Howard Decl. ¶ 46; Ex. A. Additionally, similar information was withheld, pursuant to Exemption 7(C), from records which "were compiled for law enforcement purposes in that the information contained within these records was created and used by CBP in its mission to secure the borders of the United States." *Id*. at ¶ 49. CBP carefully weighed the privacy interests of the individuals against any public interest in disclosure and determined that the individuals' privacy interests outweighed any public interest. *Id*. at ¶¶ 46, 49. Thus, the information was properly withheld.

As detailed above and in the accompanying declarations and *Vaughn* indices, the information withheld by Defendants is precisely the type of information that has been recognized as being subject to Exemptions 6 and 7(C). *See*, *e.g.*, *Talbot v. U.S. Dep't of State*, Civ. A. No. 17-0588 (CRC), 2018 WL 2739921, at *6 (D.D.C. June 7, 2018) (signatures properly withheld); *Parker v. U.S. Dep't of Justice*, 986 F. Supp. 2d 30, 38 (D.D.C. 2013) (signature and phone number properly withheld).

17

### D.  FOIA Exemption 7(E) Was Properly Applied

FOIA Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'"  *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).   In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"   *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

### 1.  USACE's Withholdings

As detailed in the Roberts Declaration and USACE's *Vaughn* index, USACE withheld, pursuant to Exemption 7(E), information concerning proposed border infrastructure, the disclosure of which would reveal law enforcement techniques, procedures, and assessment of vulnerabilities along the United States-Mexico border.  Roberts Decl. at ¶ 15; Ex. D.  As Damon

Roberts explains, "if this information was disclosed, individuals could use it to circumvent border protection and U.S. immigration law." *Id.*

As detailed in USACE's *Vaughn* index, the information protected by USACE includes the number of border patrol stations and border patrol officers along the United States-Mexico border as well as specifics concerning the location and length of border fencing.  The disclosure of such information would facilitate circumvention of the border fence and the law.  *Id.* at Ex. D.

### 2.  CBP's Withholdings

As Patrick Howard explains:

> In this case, exemption (b)(7)(E) has been applied to information such as the results of the agency's capability gaps or needs requirements analyses with respect to several of CBP's law enforcement programs and initiatives, such as the Secure Border Initiative Network, the Integrated Fixed Tower Program, and the Aerostat surveillance system.   Redacted information includes technical specifications and locations of tactical infrastructure and related surveillance technology (including its capabilities and limitations, such as the conditions under which the equipment is most or least effective), and other similar information that directly relates to CBP's law enforcement mission.  The disclosure of such information could reveal law enforcement sensitive information that could reasonably be expected to permit individuals to effectuate countermeasures, alter their patterns of conduct to avoid detection, or otherwise circumvent the law.

Howard Decl. ¶ 52; Ex. A.

Howard also explains that although certain material was mistakenly withheld pursuant to Exemption 3, it, too, is protected by Exemption 7(E).  Specifically, he explains that information "compiled for law enforcement purposes in connection with the assessment of the SBI*net* program's analysis of alternatives to support decisions regarding continued deployment of the program" which "identifies CBP's cost estimates for agent, fixed, mobile, and aerial assets across USBP sectors along the southern border" was withheld because its disclosure "could

19

reveal capability gaps that would permit individuals to effect countermeasures in order to circumvent the law." *Id*. at ¶ 54.

Further, information was withheld from a "reimbursable work authorization between CBP and USACE [that] was compiled for law enforcement purposes in connection with USACE's performance of real estate acquisition, program planning/oversight, and pedestrian fence construction services in specified USBP sectors along the southern border" because its disclosure "would reveal the level of tactical infrastructure investment made in these areas, which could reveal capability gaps that would permit individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, or otherwise circumvent the law." *Id*. at ¶ 54.

Additionally, information "compiled for law enforcement purposes by CBP's OFAM to provide USBP leadership an overview of CBP's current infrastructure assets and proposals for placement of new fence along the northern and southern borders" was redacted to avoid revealing "capability gaps" that would permit individuals to circumvent the law. *Id*. at ¶ 55.

Thus, as detailed above and in the accompanying declarations and *Vaughn* indices, the information withheld by Defendants is precisely the type of information that has been recognized as being subject to Exemption 7(E). *See, e.g.*, *Friedman v. U.S. Secret Serv.*, 282 F. Supp. 3d 291, 305-07 (D.D.C. 2017) (holding Exemption 7(E) properly applied to withhold information revealing "capability gaps"); *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 18-22 (D.D.C. 2014) (concluding agency properly withheld information that would reveal border infrastructure and vulnerabilities).

## CONCLUSION

For the reasons set forth above and in the accompanying declarations, Defendants respectfully submit that their motion for summary judgment should be granted.

Dated: September 13, 2018

Respectfully submitted,

JESSIE K. LIU, D.C. Bar # 472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By: /s/ *Melanie D. Hendry*
Melanie D. Hendry
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2510
melanie.hendry2@usdoj.gov

21