## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-1037 (EGS) |
| ) | |
| U.S. ARMY CORPS OF ENGINEERS and ) | |
| U.S. CUSTOMS AND BORDER PROTECTION, ) | |
| ) | |
| Defendants. ) | |

### Declaration of Damon Roberts

I, Damon Roberts, pursuant to 28 U.S.C. §1746, make the following declaration related to the above-captioned matter:

1.      I am over 18 years of age and competent to testify as to the matters set forth below. I have personal knowledge of the information expressed herein. I submit this declaration in support of the United States Army Corps of Engineers' ("USACE") motion for summary judgment.

2.      I currently serve as the Assistant Chief Counsel for Legislation, Fiscal and General Law in the Office of the Chief Counsel, USACE. From September 6, 2015 until August 17, 2018, I served as the Center Counsel for the USACE, Humphrey Engineer Center Support Activity ("HECSA"). HECSA Office of Counsel is responsible for processing all Freedom of Information Act ("FOIA") requests for records generated by personnel at USACE Headquarters. In accordance with Army Regulation ("A.R.") 25-55, paragraph 5-200, HECSA Counsel was designated as the Initial Denial Authority ("IDA") for Headquarters ("HQ") USACE records in 1995. HECSA Counsel is not authorized to re-delegate this authority. As the IDA, I was responsible for reviewing all HQ records responsive to FOIA requests to determine whether any of the records must be withheld pursuant to one of the nine FOIA exemptions.

## USACE's SEARCH FOR RESPONSIVE RECORDS

3.      On January 20, 2017, HECSA Office of Counsel received a request for records under the FOIA from Ms. Margaret Townsend, an attorney with the Center for Biological Diversity, for documents related to walls, barriers, or other physical constructions along the U.S-Mexico and or U.S.-Canada borders created for or provided to the members of the Presidential Transition Team.  A copy of the request is attached hereto as Exhibit A.  Due to an administrative error, we did not begin processing the request until it was re-submitted on April 20, 2017.  Ms. Townsend was sent an email acknowledging her request on April 25, 2017.  A copy of the email is attached hereto as Exhibit B.

4.      During the first few months of 2017, our office received at least seven other requests for records related to the construction of a physical barrier along the U.S.-Mexico border. I identified Mr. Steven Roberts as the Project Manager in USACE Headquarters responsible for working with Customs and Border Patrol.  I determined that Mr. Roberts would have a copy of all responsive documents located at the USACE Headquarters, due to his position as Project Manager. Mr. Roberts stored all of his documents related to the construction of a physical barrier in an electronic folder on his network drive.  He stored all of his electronic correspondence related to the construction of a physical barrier in a specific Outlook folder.  Mr. Roberts searched the aforementioned electronic folder on his network drive and the relevant Outlook folder for all documents responsive to the FOIA request.  Mr. Roberts also searched his physical paper files for responsive documents.   On April 18, 2017, Mr. Roberts provided me all records within his possession related the construction of a physical barrier along the U.S.-Mexico border.

5.      An attorney in my office reviewed the documents provided by Mr. Roberts to determine which documents were responsive to the various FOIA requests we had received

pertaining to a physical barrier along the U.S. – Mexico border, including the request received from Ms. Townsend, and to evaluate whether any of the documents should possibly be withheld from release under any of the FOIA exemptions. During the review, the attorney identified a number of documents that had been produced not by USACE headquarters, but rather by other federal agencies. USACE considered whether it would be most appropriate to refer the documents to the other agencies for processing and release directly to the requester or to consult with the other agencies and, after receiving their input, include them within USACE's production. The initial determination, which was reported to plaintiff via email on June 2, 2017, was to refer the documents to the other agencies. However, USACE reconsidered that determination after sending the email and instead consulted with the other agencies and, after doing so, included the documents within USACE's production. Thus, notwithstanding the June 2, 2017 email, no documents were referred and all documents have been processed and released by USACE.

6.     In early June 2017, I requested that USACE IT personnel electronically search the email account of USACE's Commanding General, Lieutenant General Todd T. Semonite, for any emails that included the terms "border wall" or "border fence." The IT search was undertaken to ensure all responsive emails to or from USACE leadership had been located and produced. A few responsive emails were identified and provided to me by an employee with the USACE Cyber Forensic Branch.

7.     We completed our internal review of USACE headquarters' responsive documents in September of 2017. At that time, I discussed the proposed redactions and documents to be withheld with the attorney in our office who had been working on the FOIA requests pertaining to the physical barrier along the U.S. – Mexico border. The responsive documents, along with our proposed redactions, were sent to CBP, the Office of the Administrative Assistant to the Secretary

of the Army, the Office of the Secretary of Defense, and the USACE's Southwest Division for consultation.  On October 31, 2017, I determined, in my role as USACE headquarters' IDA, to withhold 695 pages of attachments in their entirety (subject to the clarification below), release 88 pages of emails in part, and release 573 pages of attachments in part.  On November 1, 2017, after finishing consultation, we released all responsive, non-exempt records to the Center for Biological Diversity.  A copy of the letter that accompanied the release is attached hereto as Exhibit C.

8.     While preparing this declaration, I discovered I miscalculated the number of pages of documents withheld in their entirety in the November 1, 2017 production.  While the FOIA response letter stated 695 pages of attachments were withheld in their entirety, it turns out that many of those documents were actually released elsewhere in the production.  Upon further review, I have determined that 152 pages of attachments were withheld in their entirety.  The other 543 pages of attachments were either released in their entirety or released subject to redactions.  The provided Vaughn index (attached hereto as Exhibit D) identifies the FOIA exemptions USACE relied upon to withhold exempt material from the documents released to the Plaintiff.

## FOIA EXEMPTION (b)(5) WITHHOLDINGS

9.     Exemption (b)(5) of the FOIA is intended to protect information relating to "[i]nter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  This exemption incorporates civil rules of discovery, most notably the deliberative process privilege, which was used to withhold material responsive to the Plaintiff's request.  The purpose of the deliberative process privilege is: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that

were not in fact ultimately the grounds for an agency's action. To effect these purposes, the deliberative process privilege protects from disclosure documents containing opinions, recommendations, statements and other communications which are deliberative or pre-decisional in nature. It is invoked where it is determined that the protection of the decision-making process and the give and take between agency employees in determining courses of action or voicing opinions regarding policies, procedures or potential agency actions is critical to prevent injury to the quality of agency decisions in that regard.

10.    Here, as detailed on the accompanying *Vaughn* index, exemption (b)(5) was used to withhold documents characterized as deliberative include emails, draft documents, and communications between Department of Defense ("DoD") personnel regarding the infrastructure along our nation's borders.    Because these portions reflect pre-decisional opinions and recommendations, they are deliberative and protected from disclosure. The information withheld pursuant to FOIA exemption (b)(5) would foreseeably harm one of the three interests protected by FOIA exemption (b)(5), which are identified above.

## FOIA EXEMPTION (b)(6) WITHHOLDINGS

11.    Exemption (b)(6) of the FOIA protects information that, if released, would constitute a clearly unwarranted invasion of privacy. In applying Exemption 6, an individual privacy interest must be weighed against the public interest in that information. If the privacy interest outweighs the public interest, the information should be withheld.

12.    The names and contact information of active duty and civilian DoD personnel were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public

interest in knowing precisely which DoD personnel were included on the emails and the work contact information for those personnel.

13.     The redacted information also includes personal phone numbers and personal email addresses of DoD employees.  DoD personnel have an expectation of privacy in their personal phone numbers and personal email addresses which can be used to contact them outside of the work place.  There is no public interest in disclosure of personal phone numbers or email addresses, consequently the privacy interest outweighs the public interest in disclosure.  This information falls within the scope of FOIA exemption (b)(6) and was redacted or withheld throughout the FOIA response.

## FOIA EXEMPTION (b)(7)(E) WITHHOLDINGS

14.     Exemption (b)(7)(E) of the FOIA affords protection to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

15.     Specific information pertaining to the proposed border infrastructure was redacted pursuant to exemption 7(e).  This information, if disclosed, could reveal CBP techniques and procedures.  Specifically, it would reveal CBP's assessment of vulnerabilities along the U.S.-Mexico border.  Additionally, if this information was disclosed, individuals could use it to circumvent the border protection agents and U.S. immigration law.

## SEGREGABILITY

16.     All documents were processed to achieve maximum disclosure consistent with the provisions of the FOIA.  Every effort was made to provide the Plaintiff with all releasable material

and to reasonably segregate exempt information from releasable information.   The FOIA exemptions asserted as grounds for nondisclosure include (b)(5), (b)(6), and (b)(7)(e).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Signed this 12ᵗʰ day of September 2018.

Damon Roberts
Assistant Chief Counsel for the United
States Army Corps of Engineers

EXHIBIT A

 CENTER *for* BIOLOGICAL DIVERSITY                    *Because life is good.*

January 20, 2017

*VIA ELECTRONIC MAIL*

U.S. Army Humphreys Engineer Support Center
Attention: CEHEC-OC
7701 Telegraph Road
Alexandria, VA 22315-3860
foia@usace.army.mil

Re:    Freedom of Information Act Request:  U.S. Border Walls

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"),
from the Center for Biological Diversity ("Center"), a non-profit organization that works to
secure a future for all species hovering on the brink of extinction through science, law, and
creative media, and to fulfill the continuing educational goals of its membership and the general
public in the process.

REQUESTED RECORDS

The Center requests all records from the U.S. Army Corps of Engineers (the "Corps") that
reference walls, barriers, and/or other physical constructions along the U.S.-Mexico border
and/or U.S.-Canada border, for purposes of the Presidential transition process, created for and/or
provided to brief members of the Presidential Transition Team and/or their representatives.

For this request, the term "all records" refers to, but is not limited to, any and all documents,
correspondence (including, but not limited to, inter and/or intra-agency correspondence as well
as correspondence with entities or individuals outside the federal government), emails, letters,
notes, telephone records, telephone notes, minutes, memoranda, comments, files, presentations,
consultations, biological opinions, assessments, evaluations, schedules, telephone logs, papers
published and/or unpublished, reports, studies, photographs and other images, data (including
raw data, GPS or GIS data, UTM, LiDAR, etc.), maps, and/or all other responsive records, in
draft or final form.  All of the foregoing is included in this request if it is in the Corps'
possession and control.  If such records are no longer under the control of the Corps but were at
any time, please refer this request to the relevant federal agency or agencies.  This request is
being sent to the headquarters for the Corps with the understanding that it will be forwarded to
any other agency offices where responsive records may be located.

This request is not meant to exclude any other records that, although not specially requested, are
reasonably related to the subject matter of this request.  If you or your office have destroyed or

*Alaska · Arizona · California · Florida · Minnesota · Nevada · New Mexico · New York · Oregon · Vermont · Washington, DC*

P.O. Box 710 · Tucson, AZ 85702-0710   *tel:* (520) 623.5252   *fax:* (520) 623.9797   *www.BiologicalDiversity.org*

determine to withhold any records that could be reasonably construed to be responsive to this request, I ask that you indicate this fact and the reasons therefore in your response.

Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption.  FOIA Improvement Act of 2016 (Public Law No. 114-185), codified at 5 U.S.C. § 552(a)(8)(A).

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release. Please include a detailed ledger which includes:

1.  Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item; and

2.  Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination.  Your written justification may help to avoid litigation.

In addition, if you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and mail the non-exempt portions of such records to my attention at the address below within the statutory time limit.  5 U.S.C. § 552(b).

The Center is willing to receive records on a rolling basis.

FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in a readily-accessible electronic format and in the format requested.  *See, e.g.*, 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). "Readily-accessible" means text-searchable and OCR-formatted.  *See* 5 U.S.C. § 552(a)(3)(B). Please provide all records in a readily-accessible, electronic .pdf format.  Additionally, please provide the records either in (1) load-ready format with a CSV file index or excel spreadsheet, or if that is not possible; (2) in .pdf format, without any "profiles" or "embedded files." Profiles and embedded files within files are not readily-accessible.  *Please do not provide the records in a single, or "batched," .pdf file.*  We appreciate the inclusion of an index.

If you should seek to withhold or redact any responsive records, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption.  5 U.S.C. § 552(b).  Please correlate any redactions with specific exemptions under FOIA.

REQUEST FOR FEE WAIVER

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The fee waiver amendments of 1986 were designed specifically to provide non-profit organizations such as the Center access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and *non-profit public interest groups*." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ... ." 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

I.      The Center Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The Department of Defense regulations for the Corps at 32 C.F.R. § 286.28(d)(3) establish the same standard.

Thus, the Corps must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably-broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. 32 C.F.R. § 286.28(d)(3)(i). As shown below, the Center meets each of these factors.

A.      The Subject of This Request Concerns "The Operations and Activities of the Government."

The subject matter of this request concerns the operations and activities of the Corps. This request asks for all records from the Corps that reference walls, barriers, and/or other physical constructions along the U.S.-Mexico border and/or U.S.-Canada border, created for purposes of

3

the Presidential transition process, and/or provided to brief members of the Presidential Transition Team and/or their representatives.

This FOIA will provide the Center and the public with crucial insight into the information provided by federal agencies to the Trump transition team, including specific insight into how the primary agencies with jurisdiction over border wall construction are responding to Trump's promise to build a continuous border wall.  For example, a January 13, 2017 CNN story states that DHS started discussions about border wall construction immediately after the election, including identification of specific construction and other priority areas.  CNN, "Trump Team Discussing Border Wall With Army Corps, Interior Department" (Jan. 13, 2017).  Although there are laws that would apply to such construction, existing legislation (REAL ID Act and Secure Fence Act) delegates the DHS Secretary with authority to waive such laws in order to speed construction.  It is clear that advising the President-elect about environmental laws and other constraints relative to any potential border wall or walls are specific and identifiable activities of the government, in this case the Corps.  *Judicial Watch*, 326 F.3d at 1313 ("[R]easonable specificity is all that FOIA requires with regard to this factor") (internal quotations omitted).  Thus, the Center meets this factor.

    B.  Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow the Center to convey to the public information about how federal agencies approach border security and the border wall in particular.  Once the information is made available, the Center will analyze it and present it to its 1.1 million members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of the information provided by the Corps to the Trump transition team, including specific insight into how the primary agencies with jurisdiction over border wall construction are responding to Trump's promise to build a continuous border wall.

Thus, the requested records are likely to contribute to an understanding of the Corps' operations and activities.

    C.  Disclosure of the Requested Records Will Contribute to a Reasonably-Broad Audience of Interested Persons' Understanding of How the Corps Analyzes New Border Projects and Briefs the Presidential Transition Team.

The requested records will contribute to public understanding of how the Corps briefs the Trump transition team about new projects, specifically any potential U.S. border walls, and whether the agency's actions are consistent with the laws that would apply to such construction, or would require waivers or exemptions under existing legislation (i.e., REAL ID Act and Secure Fence Act).  The information provided by the Corps to the Trump transition team, including specific insight into how the primary agencies with jurisdiction over border wall construction are responding to Trump's promise to build a continuous border wall, are areas of interest to a

reasonably-broad segment of the public. The Center will use the information it obtains from the disclosed records to educate the public at large about how federal agencies are planning to approach border wall construction and the border wall in particular. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment.").

Through the Center's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which concern how federal agencies are planning to approach border wall construction and the border wall in particular that are not currently in the public domain – *e.g.*, in the docket on regulations.gov. *See Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d 553, 560 (D. Pa. 2005) (because requested documents "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations... ."[1]

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of the information provided by the Corps to the Trump transition team, including specific insight into how the primary agencies with jurisdiction over border wall construction are responding to Trump's promise to build a continuous border wall. The public is always well served when it knows how the government conducts its activities, particularly matters touching on legal questions. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about how federal agencies evaluate the potential border security construction and the border wall in particular.

---

[1] In this connection, it is immaterial whether any portion of the Center's request may currently be in the public domain because the Center requests considerably more than any piece of information that may currently be available to other individuals. *See Judicial Watch*, 326 F.3d at 1315.

D. <u>Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.</u>

The Center is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the information provided by the Corps to the Trump transition team, including specific insight into how the primary agencies with jurisdiction over border wall construction are responding to Trump's promise to build a continuous border wall, as compared to the level of public understanding that exists prior to the disclosure. Indeed, public understanding will be *significantly* increased as a result of disclosure because the requested records will help reveal more about how federal agencies evaluate the potential border wall construction and the border wall in particular. Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, the Center meets this factor as well.

II.   <u>The Center has a Demonstrated Ability to Disseminate the Requested Information Broadly.</u>

The Center is a non-profit organization that informs, educates, and counsels the public regarding environmental issues, policies, and laws relating to environmental issues. The Center has been substantially involved in the activities of numerous government agencies for over 25 years, and has consistently displayed its ability to disseminate information granted to it through FOIA.

In consistently granting the Center's fee-waivers, agencies have recognized: (1) that the information requested by the Center contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that the Center possesses the expertise to explain the requested information to the public; (4) that the Center possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes the Center as an established expert in the field of imperiled species, biodiversity, and impacts on protected species. The Center's track record of active participation in oversight of governmental activities and decisionmaking, and its consistent contribution to the public's understanding of those activities as compared to the level of public understanding prior to disclosure are well established.

The Center intends to use the records requested here for public education and outreach, including media, as well as for potential litigation or other legal efforts similarly. The Center's work appears in more than 2,000 news stories online and in print, radio and TV per month, including regular reporting in such important outlets as *The New York Times*, *Washington Post*, and *Los Angeles Times*. Many media outlets have reported on the potential U.S. border walls, utilizing information obtained by the Center from federal agencies including the Corps. In 2016, more than 2 million people visited the Center's extensive website, viewing a total of more than 5.2 million pages. The Center sends out more than 350 email newsletters and action alerts per year to more than 1.1 million members and supporters. Three times a year, the Center sends printed newsletters to more than 50,000 members. More than 166,900 people have "liked" the Center on Facebook, and there are postings regarding the plans of the Trump transition and how a possible U.S.-Mexico border wall could restrict endangered species movements and habitat. The Center

also regularly tweets to more than 45,500 followers on Twitter.  The Center intends to use any or all of these far-reaching media outlets to share with the public information obtained as a result of this request.

Public oversight and enhanced understanding of the Corps' duties is absolutely necessary.  In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably-broad audience of persons interested in the subject.  *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994).  The Center need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity."  *Judicial Watch*, 326 F.3d at 1314.  It is sufficient for the Center to show how it distributes information to the public generally.  *Id.*

III.     Obtaining the Requested Records is of No Commercial Interest to the Center.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to the Center's role of educating the general public.  Founded in 1994, the Center is a 501(c)(3) nonprofit conservation organization (EIN: 27-3943866) with more than 1.1 million members and online activists dedicated to the protection of endangered and threatened species and wild places.  The Center has no commercial interest and will realize no commercial benefit from the release of the requested records.

IV.     Conclusion

For all of the foregoing reasons, the Center qualifies for a full fee-waiver.  We hope that the Corps will immediately grant this fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

If you have any questions, please contact me at (971) 717-6409 or foia@biologicaldiversity.org. All records and any related correspondence should be sent to my attention at the address below.

Sincerely,

Margaret E. Townsend
Open Government Staff Attorney
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211-0374
foia@biologicaldiversity.org

# EXHIBIT B

## Smith, Mary A CIV USARMY CEHEC (US)

| | |
|---|---|
| **From:** | Smith, Mary A CIV USARMY CEHEC (US) |
| **Sent:** | Tuesday, April 25, 2017 7:52 AM |
| **To:** | 'foia@biologicaldiversity.org' |
| **Subject:** | Townsend FOIA Request - Acknowledgement - FP-17-016933 |

Dear Ms. Townsend:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request
for all records from U.S. Army Corps of Engineers that reference walls, barriers,
and/or other physical constructions along the U.S.-Mexico border and/or
U.S.-Canada border, for purposes of the Presidential transition process, created
for and/or provided to brief members of the Presidential Transition Team
and/or their representatives. Your request has been assigned tracking number
FP-17-016933.

Please be advised this office is not a repository for documents. Therefore, we must
determine where the information you have requested would be located and request
a document search be conducted by the relevant records custodians.

Best regards,

Mary Alice Smith
U.S. Army Corps of Engineers
HECSA - Office of Counsel
7701 Telegraph Road
Alexandria, VA  22315
703-428-8160 (office)
703-428-7221 (fax)
Mary.A.Smith@usace.army.mil

THIS IS A PRIVILEGED COMMUNICATION -ATTORNEY-CLIENT/ATTORNEY WORK-PRODUCT.
DO NOT RELEASE UNDER FOIA.

NOTICE:  This email and any attachments constitute non-public information
and may contain legally privileged and confidential information intended
solely for the use of the addressee(s). If you are not the intended
recipient, any reading, dissemination, distribution, copying or other use of
this email, including attachments, is prohibited and may be unlawful.  If
you have received this message in error, please delete it, including all
copies and backups, and notify me immediately by telephone at (703) 428-8160
or by email at Mary.A.Smith@usace.army.mil. Thank you.

# EXHIBIT C



**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS
HUMPHREYS ENGINEER CENTER SUPPORT ACTIVITY
7701 TELEGRAPH ROAD
ALEXANDRIA, VA  22315-3860

October 31, 2017

Office of Counsel

Ms. Margaret E. Townsend
Open Government Staff Attorney
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 11374

Dear Ms. Townsend,

This is in response to your Freedom of Information Act (FOIA) request, dated January 20, 2017, in which you sought all records from U.S. Army Corps of Engineers that reference walls, barriers, and/or other physical constructions along the U.S.-Mexico border and/or U.S.-Canada border, for purposes of the Presidential transition process, created for and/or provided to brief members of the Presidential Transition Team and/or their representatives. Your request was assigned tracking number FP-17-016933.

I have reviewed the responsive records which I will be releasing to you in redacted form pursuant to Exemption (b)(5) (deliberative process privilege, attorney-client privilege, attorney-work product privilege), Exemption (b)(6) (privacy), and Exemption (b)7(E) (records or information compiled for law enforcement purposes) of the FOIA. Six hundred ninety-five (695) pages of attachments are being withheld.

We have coordinated with Customs and Border Protection (CBP), Office of the Administrative Assistant to the Secretary of the Army (OAA), Office of the Secretary of Defense (OSD) and the U.S. Army Corps of Engineers Southwestern Division (SWD), which includes the Districts for Fort Worth, Texas, Galveston, Texas, Little Rock, Arkansas, and Tulsa, Oklahoma.

Sincerely,

Damon Roberts
HECSA Counsel

# EXHIBIT D

Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)
United States Army Corps of Engineers' *Vaughn* Index

| Document Number | Date of Document | Title of Document | Number of Pages | Description of Document | Exemption(s) Claimed | Justification for Redacting or Withholding |
|---|---|---|---|---|---|---|
| 1 | 1/10/2017 | ART Request: USACE Due-Outs | 3 | Email from Richard Stevens to Gerald O'Keefe. General Todd Semonite and other U.S. Army Corps of Engineers ("USACE") leaders were cc'd on the communication. The email discusses the potential phases of USACE support to the Department of Homeland Security (DHS) for the border wall project. Fourteen documents requested by DHS were attached to the email and were described as sample project documents. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interests | **(b)(5)** - Two pages of substantive discussion pertaining to (1) the potential phases of USACE support to DHS, and (2) sample project documents, were redacted pursuant to FOIA exemption 5. The statements were pre-decisional and deliberative with respect to USACE's final decision on how USACE could provide inter-agency services to DHS. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification/ development stage when subordinates need to have frank discussions with their superiors about the feasibility and efficacy of potential projects. **(b)(6)** - The names of three Department of Defense ("DoD") (civilian employees cc'd on the email were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The three individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were cc'd on the email. |
| 2 | 1/14/2017 | Border Fence/ Border Wall Media Queries | 1 | Email from David Hill to General Todd Semonite. The email discusses David Hill's response to a recent CNN query. | (b)(5) - Deliberative Process Privilege | **(b)(5)** - Part of a sentence, amounting to 15 words, was redacted pursuant to FOIA exemption 5. The statement contained within the redactions are predecisional and deliberative with respect to USACE's media engagement strategy. The statement was a direct part of USACE's deliberative process in formulating a method to answer media queries. Disclosure of the redacted statement would chill open conversations at USACE, particularly at the project identification stage when USACE must make numerous practical policy decisions, such as identifying an appropriate media strategy. |
| 3 | 1/17/2017 | LTG Semonite Call - Border Fence/ Border Wall Media Queries | 2 | Email from General Todd Semonite to David Hill and Charles Alexander. The email contains General Semonite's thoughts on USACE's current efforts, public affairs strategy, and questions about the potential project for CBP. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interests | **(b)(5)** - Two sentences, and two partial sentences, were redacted pursuant to FOIA exemption 5. The statements are predecisional and deliberative with respect to USACE's media engagement strategy and General Todd Semonite's position on the proposed project. Disclosure of the redacted statements would reveal premature agency recommendations or comments, and would foreseeably discourage a full consideration of alternative actions by USACE. **(b)(6)** - The name of one active duty DoD personnel cc'd on the email was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were cc'd on the email. |
| 4 | 11/29/2016 | LTG Semonite Tracking: Potential Work for DHS/ CBP Emerging Missions | 2 | Two emails between General Todd Semonite and Dave Hill. Other USACE leaders are cc'd or otherwise included on the emails. In the first email, Dave Hill outlines USACE capabilities, USACE contract capacities, CBP project cost estimates, and past support USACE has provided to CBP. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interests | **(b)(5)** - Three paragraphs and one additional sentence were redacted pursuant to FOIA exemption 5. The redacted statements are predecisional and deliberative with respect to how USACE will provide support to CBP on the proposed border wall project. Specifically, the redacted statements reveal USACE's anticipated support moving forward, CBP's cost estimates, and USACE's current organizational limitations. Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. **(b)(6)** - The names of two active duty DoD personnel included on the email were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' *Vaughn* Index**

| No. | Document | Pages | Date | Exemptions | Justification |
|---|---|---|---|---|---|
| 4.1 | ECSO Overview Brief | 14 | September, 2016 | (b)(5) - Deliberative Process Privilege; (b)(6) - Personal Privacy Interests; (b)(7)(E) - Law Enforcement Information | Overview of USACE's Engineering and Construction Support Office (ECSO). This fourteen page powerpoint presentation discusses ECSO's structure, organization, capabilities, past support to CBP, and infrastructure assessment branch. The PowerPoint includes ECSO's client portfolio, ECSO's recent funding levels, and high priority/ visibility projects. This document was attached to the "LTG Semonite Tracking..." email. | **(b)(5)** - The document was withheld in its entirety because it is predecisional and deliberative with respect to the ECSO office's current capabilities and ability to provide support to CBP on the border wall project. Disclosure would chill open conversations between USACE and CBP regarding agency capabilities and funding. **(b)(6)** - Names of DoD personnel were withheld pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. **(b)(7)(E)** - Information pertaining to the number of border stations along the U.S.-Mexico border and the number of border patrol agents was withheld pursuant to FOIA exemption (b)(7)(E). The number of border patrol stations and agents is law enforcement information that, if disclosed, could reveal CBP's techniques and procedures. Specifically, it would reveal CBP's assessment of vulnerabilities along the U.S. - Mexico border. |
| 5 | LTG Semonite Call - Border Fence/ Border Wall Media Queries | 3 | 1/17/2017 | (b)(5) - Deliberative Process Privilege; (b)(6) - Personal Privacy Interests | Email string between General Todd Semonite and Charles Alexander. The email discusses briefings held with CBP on the potential project and USACE's public affairs strategy. | **(b)(5)** - Part of a sentence, amounting to 15 words, was redacted pursuant to FOIA exemption 5. The statement contained within the redaction is predecisional and deliberative with respect to USACE's media engagement strategy. Disclosure of the redacted statement would chill open conversations at USACE, particularly at the project identification stage when USACE must make numerous practical policy decisions, such as identifying an appropriate media strategy. **(b)(6)** - The name of one active duty DoD personnel cc'd on the email was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. One USACE employee's personal cell phone number was also redacted. The individual's privacy interest in their personal cell phone number outweighs the public interest in disclosure. |
| 6 | CBP Brief | 1 | 1/4/2017 | (b)(5) - Deliberative Process Privilege; (b)(6) - Personal Privacy Interests | Email from Christopher Gatz to Mark Yenter. The email describes a recent CBP brief to USACE on the potential border wall project. During the brief, USACE and CBP discussed the potential budget, acquisition tools, timelines and practical constraints. | **(b)(5)** - Four paragraphs were redacted pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy and project execution plan. The redacted information reflects USACE decision-makers' thoughts on potential issues the project might face. Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. **(b)(6)** - One USACE employee's personal cell phone number was redacted pursuant to FOIA exemption 6. The individual's privacy interest in their personal cell phone number outweighs the public interest in disclosure. The name of one civilian DoD employee cc'd on the email was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' Vaughn Index**

| No. | Date | Title / From | Pages | Description | Exemption | Justification |
|---|---|---|---|---|---|---|
| 6.1 | 11/23/2016 | CBP Brief Slides | 14 | CBP slide show created for a brief to USACE leadership. The slide show outlines existing fencing along the U.S. - Mexico border and proposed new fencing locations along the U.S. - Mexico border. The slides outline the potential costs of building additional fencing. CBP's proposed approach to construction, practical considerations such as real estate acquisition, and estimated timelines. | (b)(7)(e) - Law Enforcement Information | (b)(7)(e) - Four maps, and one description, depicting the length or location of the proposed border fencing were redacted pursuant to FOIA exemption 7(e). The location and length of the border fencing is law enforcement information that, if disclosed, could reveal CBP's techniques and procedures. Specifically, it would reveal CBP's assessment of vulnerabilities along the U.S. - Mexico border. Additionally, if this information was disclosed, individuals could use it to circumvent the border fence and the law. |
| 7 | 1/9/2017 | CBP | 1 | Email from Christopher Gatz to the USACE Program Manager expressing a desire to discuss the way ahead on the potential CBP project. | (b)(6) - Personal Privacy Interests | (b)(6) - One USACE employee's personal cell phone number was redacted pursuant to FOIA exemption 6. The individual's privacy interest in their personal cell phone number outweighs the public interest in disclosure. The name of one civilian DoD included on the DoD List of Names policy. The individual's privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 8 | 1/6/2017 | LTG Semonite WILCO - Army Corps costing work on border fences | 8 | Email string between USACE leaders discussing potential acquisition strategies and project planning requirements (real estate, environmental review, etc.). The email also contains substantive thoughts on the fence's location and length, potential designs, project timelines, and funding needs. | (b)(5) - Deliberative Process Privilege / (b)(6) - Personal Privacy Interests | (b)(5) - Eight paragraphs were redacted in their entirety, and five paragraphs were redacted in part, pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy and project execution plan. The redacted information includes project cost estimates, physical details of the fencing, and acquisition options (discussed in the context of USACE's past project experience). Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. (b)(6) - USACE employees' personal cell phone numbers were redacted pursuant to FOIA exemption 6. The individuals' privacy interest in their personal cell phone numbers outweighs the public interest in disclosure. The name and emails of approximately twelve DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 9 | 1/5/2017 | Info Paper - CBP - ART Brief | 2 | Email from the USACE Program Manger to Jason Shinar. The purpose of the email was to provide attachments, no substantive discussion is contained therein. | (b)(6) - Personal Privacy Interests | (b)(6) - One USACE employee's personal cell phone number was redacted pursuant to FOIA exemption 6. The individual's privacy interest in the personal cell phone number outweighs the public interest in disclosure. The name and email addresses of two civilian DoD employees included on the correspondence were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |

**Center for Biological Diversity v. U.S. Army Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' Vaughn Index**

| No. | Date | Title | # | Document Description | Exemptions | Justification |
|---|---|---|---|---|---|---|
| 10 | 1/11/2017 | Political Transition - USACE RFI's | 2 | Email from the Executive Officer for the Commanding General outlining a proposed acquisition strategy for the proposed CBP project. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interests | (b)(5) - One paragraph was redacted pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy. The redacted information discusses an example contract solicitation and the benefits of the proposed acquisition method. Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. (b)(6) - USACE employees' personal cell phone numbers were redacted pursuant to FOIA exemption 6. The individuals' privacy interest in their personal cell phone numbers outweighs the public interest in disclosure. The name, emails and room numbers of approximately eight DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 11 | 1/4/2017 | Presidential Transition Narratives & Maps | 3 | Email between USACE leaders discussing potential responses to the DHS transition team's questions. The email also contains conversations pertaining to the time it would take for USACE to execute contract documents for the potential project. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interests | (b)(5) - One paragraph was redacted pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy. The redacted information discusses the time it would take USACE to solicit and award a Multiple Award Task Order Contract ("MATOC contract"). Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. (b)(6) - One USACE employee's personal cell phone number was redacted pursuant to FOIA exemption 6. The individuals' privacy interest in their personal cell phone number outweighs the public interest in disclosure. The name and email addresses of approximately three DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 11.1 | N/A | Presidential Transition Office 020 | 1 | Draft response to Presidential Transition Office Tasking 020 - USBP Facilities. The document pertains to the expansion of CBP detention facilities. The document was attached to the "Presidential Transition Narratives & Maps" email. | (b)(5) - Deliberative Process | (b)(5) - The draft response was withheld in its entirety because it contains CBP's assessment of funding and resource constraints. The withheld information is predecisional and deliberative with respect to USACE and CBP's final policy decision on what funding and resources would be required to expand CBP detention facilities. Disclosure of the draft response would chill open conversations between USACE and CBP and would prematurely reveal agency recommendations. |
| 11.2 | N/A | Border Fence - SW Border | 1 | Diagram of potential fence locations along the U.S. - Mexico border. The document was attached to the "Presidential Transition Narratives & Maps" email. | (b)(7)(e) - Law Enforcement Information | (b)(7)(e) - One diagram depicting the location of the proposed border fence along the U.S. - Mexico border was withheld pursuant to FOIA exemption 7(e). The location of the border fencing is law enforcement information that, if disclosed, could reveal CBP's techniques and procedures. Specifically, it would reveal CBP's assessment of vulnerabilities along the U.S. - Mexico border. Additionally, if this information was disclosed, individuals could use it to circumvent the border fence, and thereby, the law. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' Vaughn Index**

| ID | Date | Document | Count | Description | Exemption | Exemption Explanation |
|---|---|---|---|---|---|---|
| 11.3 | N/A | Border Fence by Sector | 9 | Nine diagrams/ maps of potential fence locations along the U.S. - Mexico border, broken down by CBP sector. The document was attached to the "Presidential Transition Narratives & Maps" email. | (b)(7)(e) - Law Enforcement Information | (b)(7)(e) - Nine diagrams/ maps depicting the location of the proposed border fence along the U.S. - Mexico border were redacted pursuant to FOIA exemption 7(e). The location of the border fencing is law enforcement information that, if disclosed, could reveal CBP's techniques and procedures. Specifically, it would reveal CBP's assessment of vulnerabilities along the U.S. - Mexico border. Additionally, if this information was disclosed, individuals could use it to circumvent the border fence, and thereby, the law. |
| 11.4 | N/A | Border Fence Overview by State | 3 | Three diagrams/ maps of potential fence locations along the U.S. - Mexico border, broken down by State (California, etc.). The document was attached to the "Presidential Transition Narratives & Maps" email. | (b)(7)(e) - Law Enforcement Information | (b)(7)(e) - Three diagrams/ maps depicting the location of the proposed border fence along the U.S. - Mexico border were redacted pursuant to FOIA exemption 7(e). The location of the border fencing is law enforcement information that, if disclosed, could reveal CBP's techniques and procedures. Specifically, it would reveal CBP's assessment of vulnerabilities along the U.S. - Mexico border. Additionally, if this information was disclosed, individuals could use it to circumvent the border fence, and thereby, the law. |
| 11.5 | N/A | Border Fence Strip Map | 113 | 113 diagrams/ maps of potential fence locations along the U.S. - Mexico border. The 113 maps depict the fencing at the county or town level, and provide additional specificity on the proposed fence's locations. The document was attached to the "Presidential Transition Narratives & Maps" email. | (b)(7)(e) - Law Enforcement Information | (b)(7)(e) - 113 diagrams/ maps depicting the location of the proposed border fence along the U.S. - Mexico border were redacted pursuant to FOIA exemption 7(e). The 113 maps depict the fencing at the county or town level, and provide a great deal of specificity on the fence's potential locations. The location of the border fencing is law enforcement information that, if disclosed, could reveal CBP's techniques and procedures. Specifically, it would reveal CBP's assessment of vulnerabilities along the U.S. - Mexico border. Additionally, if this information was disclosed, individuals could use it to circumvent the border fence, and thereby, the law. |
| 11.6 | N/A | Presidential Transition Office Tasking 017 | 1 | One page draft response to Presidential Transition Tasking 017 - Comprehensive picture of the status of the border fence. The document contains CBP and USACE's thoughts on the type of fencing that could be constructed along the border and the purpose of each type of fencing. | (b)(5) - Deliberative Process Privilege | (b)(5) - The draft response was withheld in its entirety because it contains CBP's assessment of fencing types, particularly given past practices. The withheld information is predecisional and deliberative with respect to USACE and CBP's final policy decision on what type of fencing to construct along the U.S. - Mexico border. Disclosure of the draft response would chill open conversations between USACE and CBP and would prematurely reveal agency recommendations. |
| 11.7 | N/A | Presidential Transition Office Tasking 019 | 3 | One page draft response to Presidential Transition Tasking 019 - Resources for wall/ barrier construction. The document contains CBP and USACE's thoughts on leadership, expertise, inter-agency partnerships, legal authorities, acquisition strategies, supply chains, and real estate condemnation. | (b)(5) - Deliberative Process Privilege | (b)(5) - The draft response was withheld in its entirety because it contains CBP's assessment of available resources that could be used for wall/ barrier construction and issues that might arise during such a project. The withheld information is predecisional and deliberative with respect to USACE and CBP's final policy decision on how to best execute a project to construct a physical barrier along the U.S. - Mexico border. Disclosure of the draft response would chill open conversations between USACE, CBP and the Presidential Transition Team and would prematurely reveal agency recommendations. |
| 12 | 1/6/2017 | Transition Team Meeting - Border Fence | 2 | Email discussing due-outs for upcoming meeting with the Presidential Transition Team | (b)(6) - Personal Privacy Interests | (b)(6) - One USACE employee's personal cell phone number was redacted pursuant to FOIA exemption 6. The individual's privacy interest in the personal cell phone number outweighs the public interest in disclosure. The name and email of two DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 13 | 1/5/2017 | Info Paper - CBP - ART Brief | 1 | Email contains no substantive discussion. The purpose of the email was to transmit three attached documents. | (b)(6) - Personal Privacy Interests | (b)(6) - The name and email of one DoD employee included on the email string was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' *Vaughn* Index**

| # | Date | Document | Pages | Description | Exemptions | Justification |
|---|------|----------|-------|-------------|------------|---------------|
| 14 | 1/5/2017 | Information Paper on USCE Support to CBP for ART Brief – 5 Jan 17 | 1 | Email contains no substantive discussion. The purpose of the email was to transmit four attached documents | (b)(6) - Personal Privacy Interests | (b)(6) - The name and emails of one DoD employee included on the email string was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 15 | 1/6/2017 | LTG Semonite WILCO – Army Corps costing work on border fences | 9 | Email string between USACE leaders discussing potential acquisition strategies and project planning requirements (real estate, environmental review, etc.). The email also contains substantive thoughts on the fence's location and length, potential designs, project timelines, and funding needs. | (b)(5) - Deliberative Process Privilege; (b)(6) - Personal Privacy Interests | (b)(5) - Eight paragraphs were redacted in their entirety, and five paragraphs were redacted in part, pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy and project execution plan. The redacted information includes project cost estimates, physical details of the fencing, and acquisition options (discussed in the context of USACE's past project experience). Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. (b)(6) - USACE employees' personal cell phone numbers were redacted pursuant to FOIA exemption 6. The individuals' privacy interest in their personal cell phone numbers outweighs the public interest in disclosure. The name and emails of approximately twelve DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 16 | 1/6/2017 | LTG Semonite WILCO – Army Corps costing work on border fences | 9 | Email string between USACE leaders discussing potential acquisition strategies and project planning requirements (real estate, environmental review, etc.). The email also contains substantive thoughts on the fence's location and length, potential designs, project timelines, and funding needs. | (b)(5) - Deliberative Process Privilege; (b)(6) - Personal Privacy Interests | (b)(5) - Eight paragraphs were redacted in their entirety, and five paragraphs were redacted in part, pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy and project execution plan. The redacted information includes project cost estimates, physical details of the fencing, and acquisition options (discussed in the context of USACE's past project experience). Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. (b)(6) - USACE employees' private cell phone numbers were redacted pursuant to FOIA exemption 6. The individuals' privacy interest in their personal cell phone numbers outweighs the public interest in disclosure. The name and emails of approximately twelve DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' Vaughn Index**

| | | | | |
|---|---|---|---|---|
| 17 | 1/9/2017 | LTG Semonite WILCO - Army Corps costing work on border fences | Email string between USACE leaders discussing potential acquisition strategies and project planning requirements (real estate, environmental review, etc.). The email also contains substantive thoughts on the fence's location and length, potential designs, project timelines, and funding needs. | 9 | (b)(5) - Deliberative Process Privilege (b)(6) - Personal Privacy Interests | **(b)(5)** - Eight paragraphs were redacted in their entirety, and five paragraphs were redacted in part, pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy and project execution plan. The redacted information includes project cost estimates, physical details of the fencing, and acquisition options (discussed in the context of USACE's past project experience). Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. **(b)(6)** - USACE employees' personal cell phone numbers were redacted pursuant to FOIA exemption 6. The individuals' privacy interest in their personal cell phone numbers outweighs the public interest in disclosure. The name and emails of approximately twelve DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 18 | 1/5/2017 | Information Paper on USACE Support to CBP for ART Brief | Email discussing a photograph of a potential pedestrian fencing along the U.S. – Mexico border and a draft Information Paper. | 2 | (b)(5) - Deliberative Process Privilege (b)(6) - Personal Privacy Interest | **(b)(5)** - One paragraph was redacted in its entirety pursuant to FOIA exemption 5. The statements contained therein discuss a photograph of pedestrian fencing along the U.S. - Mexico border and a draft Information Paper. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's position and recommendations on the proposed border fencing project. Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. **(b)(6)** - One USACE employee's personal cell phone number was redacted pursuant to FOIA exemption 6. The individual's privacy interest in the personal cell phone number outweighs the public interest in disclosure. The names and emails of two DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' Vaughn Index**

| # | Date | Document | Description | Exemptions | Explanation |
|---|------|----------|-------------|------------|-------------|
| 19 | 1/5/2017 | Information Paper on USACE Support to CBP for ART Brief | 1 | Email discussing a photograph of potential pedestrian fencing along the U.S. – Mexico border and a draft Information Paper. | (b)(5) - Deliberative Process Privilege (b)(6) - Personal Privacy Interest | **(b)(5)** - One paragraph was redacted in its entirety pursuant to FOIA exemption 5. The statements contained therein discuss a photograph of pedestrian fencing along the U.S. – Mexico border and a draft Information Paper. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's position and recommendations on the proposed border fencing project. Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. **(b)(6)** - The names and email addresses of two DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 20 | 1/5/2017 | Information Paper on USACE Support to CBP for ART Brief | 2 | Email discussing a photograph of potential pedestrian fencing along the U.S. – Mexico border and a draft Information Paper. | (b)(5) - Deliberative Process Privilege (b)(6) - Personal Privacy Interest | **(b)(5)** - Eight paragraphs were redacted in their entirety, and five paragraphs were redacted in part, pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy and project execution plan. The redacted information includes project cost estimates, physical details of the fencing, and acquisition options (discussed in the context of USACE's past project experience). Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. **(b)(6)** - One USACE employee's personal cell phone number was redacted pursuant to FOIA exemption 6. The individual's privacy interest in the personal cell phone number outweighs the public interest in disclosure. The names and emails of two DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 21 | 1/11/2017 | Political Transition - USACE RFI's | 3 | Email from the Executive Officer for the Commanding General outlining a proposed acquisition strategy for the proposed CBP project. | (b)(5) - Deliberative Process Privilege (b)(6) - Personal Privacy Interest | **(b)(5)** - One paragraph was redacted pursuant to FOIA exemption 5. The statements contained therein are predecisional and deliberative with respect to USACE and CBP's acquisition strategy. The redacted information discusses an example contract solicitation and the benefits of the proposed acquisition method. Disclosure of the redacted statements would chill open conversations at USACE and would prematurely reveal agency recommendations. Such a disclosure would discourage a full consideration of alternative actions by USACE, and discourage frank discussions between subordinates and superiors. **(b)(6)** - USACE employees' personal cell phone numbers were redacted pursuant to FOIA exemption 6. The individuals' privacy interest in their personal cell phone numbers outweighs the public interest in disclosure. The names, emails and room numbers of approximately eight DoD employees included on the email string were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' *Vaughn* Index**

| | | | | | |
|---|---|---|---|---|---|
| 22 | 1/10/2017 | Transition Team Deliverables | 2 | Email discussing edits to documents USACE was working on for the Presidential transition team. | **(b)(6)** - Personal Privacy Interests |
| 23 | 1/10/2017 | Transition Team Deliverables | 2 | Email discussing edits to documents USACE was working on for the Presidential transition team | **(b)(6)** - Personal Privacy Interests |
| 24 | 1/10/2017 | Transition Team Deliverables | 2 | Email discussing edits to documents USACE was working on for the Presidential transition team | **(b)(6)** - Personal Privacy Interests |
| 24.1 | N/A | ART Document Deliverables | 2 | Document summarizes a recent Agency Review Team meeting between USACE and DHS. The document discusses the potential phases of USACE support to the Department of Homeland Security (DHS) for the border wall project. Sample project documents are also cited and discussed | **(b)(5)** - Deliberative Process Privilege |
| 25 | 1/10/2017 | Transition Team Deliverables | 4 | The email discusses the potential phases of USACE support to the Department of Homeland Security (DHS) for the border wall project. The email also cites and discusses sample project documents (i.e. MATOC solicitation, MATOC award, AE base contract, AE task order). | **(b)(5)** - Deliberative Process Privilege   **(b)(6)** - Personal Privacy Interest |

Column 7 (Justification):

**Row 22:** **(b)(6)** - One DoD employee's name was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email.

**Row 23:** **(b)(6)** - One DoD employee's name was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email.

**Row 24:** **(b)(6)** - One DoD employee's name was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email.

**Row 24.1:** **(b)(5)** - The entire document was withheld in its entirety pursuant to FOIA exemption 5. The statements were pre-decisional and deliberative with respect to USACE's final decision on how USACE could provide inter-agency services to DHS. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification/ development stage when subordinates need to have frank discussions with their superiors about the feasibility and efficacy of potential projects.

**Row 25:** **(b)(5)** - Over three pages of substantive discussion pertaining to (1) the potential phases of USACE support to DHS, and (2) sample project documents, were redacted pursuant to FOIA exemption 5. The statements were pre-decisional and deliberative with respect to USACE's final decision on how USACE could provide inter-agency services to DHS. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification/ development stage when subordinates need to have frank discussions with their superiors about the feasibility and efficacy of potential projects.   **(b)(6)** - The names of two DoD civilian employees were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were cc'd on the email.

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**
**United States Army Corps of Engineers' Vaughn Index**

| No. | Title | Date | Description | Exemptions | Justification |
|---|---|---|---|---|---|
| 26 | Transition Team Meeting - Border Fence | 1/10/2017 | The email discusses deliverables for the Agency Review Team, a collaborative project development team between USACE and DHS. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interest | **(b)(5)** - One sentence was redacted pursuant to FOIA exemption 5. The redacted statement reflects the opinion of a USACE decisionmaker on the potential legal requirements pertaining to the border wall project. The statement is pre-decisional and deliberative with respect to USACE's final decision on the legal requirements pertaining to the proposed project. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification / development stage when subordinates need to have frank discussions with their superiors about the feasibility and efficacy of potential projects. **(b)(6)** - The name of one DoD civilian employee was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were cc'd on the email. One USACE employee's personal cell phone number was also redacted pursuant to FOIA exemption 6. The individual's privacy interest in the personal cell phone number outweighs the public interest in disclosure. |
| 27 | Transition Team Meeting - Border Fence | 1/10/2017 | The email discusses deliverables for the Agency Review Team, a collaborative project development team between USACE and DHS. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interest | **(b)(5)** - One sentence was redacted pursuant to FOIA exemption 5. The redacted statement reflects the opinion of a USACE decisionmaker on the potential legal requirements pertaining to the border wall project. The statement is pre-decisional and deliberative with respect to USACE's final decision on the legal requirements pertaining to the proposed project. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification / development stage when subordinates need to have frank discussions with their superiors about the feasibility and efficacy of potential projects. **(b)(6)** - The names of two DoD civilian employees were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were cc'd on the email. One USACE employee's personal cell phone number was also redacted pursuant to FOIA exemption 6. The individual's privacy interest in the personal cell phone number outweighs the public interest in disclosure. |
| 27.1 | ART Document Deliverables | N/A | Document summarizes a recent Agency Review Team meeting between USACE and DHS. The document discusses the potential phases of USACE support to the Department of Homeland Security (DHS) for the border wall project. Sample project documents are also cited and discussed. | (b)(5) - Deliberative Process Privilege | **(b)(5)** - The entire document was withheld in its entirety pursuant to FOIA exemption 5. The statements were pre-decisional and deliberative with respect to USACE's final decision on how USACE could provide inter-agency services to DHS. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification / development stage when subordinates need to have frank discussions with their superiors about the feasibility and efficacy of potential projects. |

**Center for Biological Diversity v. U.S. Army Corps of Engineers and U.S. Customs and Border Protection, Civil Action No. 14-1037 (EGS)**

**United States Army Corps of Engineers' *Vaughn* Index**

| 28 | 1/10/2017 | Transition Team Meeting - Border Fence | 3 | The email discusses deliverables for the Agency Review Team, a collaborative project development team between USACE and DHS. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interest | **(b)(5)** - One sentence was redacted pursuant to FOIA exemption 5. The redacted statement reflects the opinion of a USACE decisionmaker on the potential legal requirements pertaining to the border wall project. The statement is pre-decisional and deliberative with respect to USACE's final decision on the legal requirements pertaining to the proposed project. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification / development stage when subordinates need to have frank discussions with their superiors about the feasibility and efficacy of potential projects. **(b)(6)** - The names of two DoD civilian employees were redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individuals' privacy and security interest in their personally identifying information outweighs the public interest in knowing precisely which USACE employees were cc'd on the email. One USACE employee's personal cell phone number was also redacted pursuant to FOIA exemption 6. The individual's privacy interest in the personal cell phone numbers outweighs the public interest in disclosure. |
| --- | --- | --- | --- | --- | --- | --- |
| 29 | 1/10/2017 | ART Document Deliverables | 1 | The email transmits an attached document. | (b)(6) - Personal Privacy Interests | **(b)(6)** - One DoD employee's name was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |
| 30 | 1/10/2017 | Transition Team Deliverables | 2 | The email summarizes an Agency Review Team meeting between USACE and DHS. The document discusses the potential phases of USACE support to the Department of Homeland Security (DHS) for the border wall project. Sample project documents are also cited and discussed. | (b)(5) - Deliberative Process Privilege<br>(b)(6) - Personal Privacy Interest | **(b)(5)** - Approximately 1.5 pages of substantive discussion was redacted pursuant to FOIA exemption 5. The statements were pre-decisional and deliberative with respect to USACE's final decision on how USACE could provide inter-agency services to DHS. Disclosure of the redacted information would chill open conversations at USACE, particularly at the very early project identification / development stage when subordinates need to have frank conversations with their superiors about the feasibility and efficacy of potential projects. **(b)(6)** - One DoD employee's name was redacted pursuant to FOIA exemption 6 and the DoD List of Names policy. The individual's privacy and security interest in personally identifying information outweighs the public interest in knowing precisely which USACE employees were included on the email. |