**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|   |   |
|---|---|
| | ) |
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 17-cv-1037 (EGS) |
| | ) |
| U.S. ARMY CORPS OF ENGINEERS and | ) |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) |
| | ) |
| Defendants. | ) |
_____)

**DEFENDANTS' REPLY IN SUPPORT OF THEIR SUMMARY JUDGMENT MOTION**
**AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

Defendants U.S. Army Corps of Engineers ("USACE") and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants") respectfully submit this memorandum of points and authorities in further support of their motion for summary judgment and in opposition to Plaintiff Center for Biological Diversity's ("Plaintiff") cross-motion for summary judgment. As set forth in their initial motion papers, declarations, *Vaughn* indices, and below, Defendants performed reasonable and adequate searches for responsive records and properly withheld exempt material. Therefore, their motion for summary judgment should be granted.

**I.  DEFENDANTS PERFORMED REASONABLE AND ADEQUATE SEARCHES FOR RESPONSIVE RECORDS**

As Defendants explained in their initial memorandum and supporting declarations, they performed searches that were "reasonably calculated to uncover all relevant documents," *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and Plaintiff has not disputed the adequacy of the searches performed.

## II.      FOIA EXEMPTIONS 4, 5, 6, AND 7 WERE PROPERLY INVOKED

Although Plaintiff challenges certain of the Defendants' withholdings, as Defendants' motion papers and supporting declarations demonstrate, USACE and CBP carefully reviewed the responsive records, properly withheld information pursuant to FOIA Exemptions 4, 5, 6, 7(C), and 7(E), and produced to Plaintiff all reasonably segregable, non-exempt material.  Thus, their motion for summary judgment should be granted.

### A.  CBP Properly Applied FOIA Exemption 4

Although Plaintiff acknowledges that CBP properly withheld "design drawings and specifications pursuant to Exemption 4 in 0090-BW FOIA, 0091-BW FOIA, and 0110-BW FOIA," (*see* Pl. Mem. at 8 n.3), Plaintiff contends that CBP's other Exemption 4 withholdings were improper.  As explained in the accompanying Second Declaration of Patrick Howard ("Second Howard Decl."):

> Plaintiff challenges the withholding of The Boeing Company's ("Boeing's") unit cost and total price information in Bates-numbered documents 0061-BW FOIA, 0062-BW FOIA, and 0063-BW FOIA withheld pursuant to exemption (b)(4).  Upon further review, it was determined that exemption (b)(4) is inapplicable.  Furthermore, the redacted information is publicly available on the Federal Procurement Data System – Next Generation website, available at https://www.fpds.gov, by searching the contract number.  Accordingly, CBP intends to release to Plaintiff the information in these documents previously withheld pursuant to exemption (b)(4).

Second Howard Decl. ¶ 6.  Consequently, because CBP is releasing the previously disputed material it withheld pursuant to Exemption 4, no disputes concerning CBP's Exemption 4 withholdings remains.

### B.  Defendants Properly Applied FOIA Exemption 5

As detailed in the declarations and *Vaughn* indices, Defendants withheld, pursuant to FOIA Exemption 5, information that is protected by the deliberative process and attorney-client

privileges.  Although Plaintiff does not challenge the withholding of the information subject to the attorney-client privilege, Plaintiff does challenge the withholding of information protected by the deliberative process privilege on four grounds, each of which miss the mark.  Specifically, Plaintiff incorrectly claims that Defendants failed to identify the policy decisions at issue, challenges the withholding of what it characterizes as factual rather than deliberative information, asserts that certain of the records are not predecisional, and claims that Defendants did not properly segregate all non-exempt information.

As the Supreme Court explained in *NLRB v. Sears Roebuck & Co*., 421 U.S. 132, 151 n.18 (1975), the existence of the deliberative process privilege does not depend "on the ability of an agency to identify a specific decision[.]"  Nonetheless, although Plaintiff contends that "the agencies did not identify any policy decision at issue in the withheld records," (*see* Pl. Mem. at 13), review of the declarations and *Vaughn* indices demonstrates that Defendants clearly identified the policy issues they are deliberating.

Patrick Howard explained in his initial declaration that the information CBP withheld pertains to CBP's deliberations concerning "the agency's approach to implement law enforcement measures along the U.S.-Mexico border" under various program initiatives and CBP's "potential plans for construction of new tactical border infrastructure as directed by President Trump."  Howard Decl. ¶ 42.  CBP's *Vaughn* index describes in detail the information to which Exemption 5 was applied[1] along with as detailed as possible a description of the withheld material which does not reveal the protected information.

---

[1] The majority of the information withheld pursuant to Exemption 5 was also withheld pursuant to Exemption 7(E).

Similarly, USACE also clearly described the relevant policies.  As explained in the Roberts Declaration:

> Here, as detailed on the accompanying *Vaughn* index, exemption (b)(5) was used to withhold documents characterized as deliberative includ[ing] emails, draft documents, and communications between Department of Defense ("DoD") personnel regarding the infrastructure along our nation's borders. Because these portions reflect pre-decisional opinions and recommendations, they are deliberative and protected from disclosure.

Roberts Decl. ¶ 10.  As detailed in its accompanying *Vaughn* index, USACE protected deliberative, pre-decisional documents discussing matters including how USACE could provide inter-agency services and support to the Department of Homeland Security ("DHS") and CBP; media engagement; acquisition strategy; plans for project execution; and funding, resource, and legal considerations.  *Id*. at Ex. D.

Thus, Plaintiff's contention that Defendants failed to identify the policy decisions at issue is demonstrably false.  So, too, is Plaintiff's claim that certain of the documents are not predecisional because they purportedly "describe or explain decisions that had already been made and actions that had already taken place for the purposes of advising the Presidential Transition Team, which by their nature are not predecisional."  *See* Pl. Memo. at 17-18.  As the declarations and *Vaughn* indices make clear, the withheld documents concern ongoing deliberations related to the policy issues described above.

Plaintiff also incorrectly claims that portions of the withheld information are factual and, therefore, not subject to the deliberative process privilege.  However, the distinction between factual and deliberative is not as rigid as Plaintiff contends.  Thus, "context matters," and where, as here, the factual material "reflects the full and frank exchange of ideas" and cannot "be released without harming the deliberative processes of the government," it is properly withheld

pursuant to Exemption 5.  *See*, *e.g.*, *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 13 (D.C. Cir. 2014); *Quarles v. Dep't of Navy*, 893 F.2d 390, 392-93 (D.C. Cir. 1990) (withholding factual material because it would expose agency's decisionmaking process and chill future deliberations).

Finally, Plaintiff's assertion that Defendants did not release all reasonably segregable material is also incorrect.  As explained in the supporting declarations, USACE and CBP carefully reviewed the responsive records and produced to Plaintiff all reasonably segregable, non-exempt material.  Howard Decl. ¶ 56; Roberts Decl. ¶ 16.

**C.  Exemptions 6 and 7(C) Were Properly Applied**

With respect to Defendants' Exemption 6 and 7(C) withholdings, Plaintiffs dispute only CBP's redaction of "the names of non-law-enforcement and civilian agency employees."  *See* Pl. Mem. at 21. Plaintiff incorrectly claims that the release of the names of lower-level CBP employees that appear on documents concerning the United States-Mexico border – which has been the subject of extensive media coverage – would not constitute unwarranted invasion of privacy.  *Id*.

As Patrick Howard explains in his accompanying second declaration:

> The redacted documents largely consist of internal agency emails among CBP offices coordinating the collection of records in response to specific requests from the Presidential Transition Team.  These communications did not involve agency decision-making or instructions from the individuals' superiors other than direction to provide the requested information.  While information concerning federal employees' names, titles, grades, and salaries is generally publicly available, the names of lower-level CBP employees were redacted consistent with Department of Homeland Security ("DHS") guidance concerning the protection of personal information in light of the increase in general threats against DHS employees stemming from the Government's actions surrounding immigration.  Similarly, the names of third-party, non-CBP employees were redacted from documents such as studies and

> analyses, as these individuals played no role in the agency's decision-making process other than to perform the studies and analyses requested.  Given the current environment surrounding immigration, and the individuals' lack of authority to direct CBP's actions, it was determined that the release of this information would constitute an unwarranted invasion of privacy.  In contrast, where the documents identify higher ranking CBP officials, the names were not withheld, as the information bears more closely on the agency's actions with respect to the matter central to Plaintiff's request.

Second Howard Decl. ¶ 8.  This Court has repeatedly recognized that such individuals do, in fact, have a significant privacy interest.  *See*, *e.g.*, *Judicial Watch, Inc. v. Dep't of State*, 875 F. Supp. 2d 37, 37 (D.D.C. 2012) (recognizing "the risk of media harassment and undesired contact"); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (noting threat to privacy of DHS personnel derived from nature of their employment by an agency that "advocates for security measure that may be unpopular").

Plaintiff has also failed to satisfy its burden of establishing that disclosure of the withheld names would serve a FOIA public interest.  *See*, *e.g.*, *Salas v. Office of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant.").  As the Supreme Court has explained, there must be a "nexus between the requested information and the asserted public interest that would be advanced by disclosure." *NARA v. Favish*, 541 U.S. 157, 172-73 (2004).  No such nexus exists here.

Plaintiff contends that there is a public interest in disclosure which it describes as an interest "in determining whether government officials are advised of and considering the U.S.-Mexico border wall's potentially far reaching and irreversible environmental damage" and notes that the purpose of the FOIA request is "[u]nderstanding whether these considerations have been communicated to the Presidential Transition Team[.]"  *See* Pl. Mem. at 22.  However, there is

little, if any, connection between the stated public interest and the names of these lower-level employees.   On balance, these employees' privacy interests overwhelmingly outweigh any public interest in the release of their names.   Therefore, their names were properly redacted.

### D.  FOIA Exemption 7(E) Was Properly Applied

As detailed in the initial motion papers, Defendants withheld, pursuant to Exemption 7(E), information concerning proposed border infrastructure, infrastructure investment, capability gaps, technical specifications, locations of tactical infrastructure, and surveillance technology.  *See* Roberts Decl. ¶ 15; Howard Decl. ¶ 52.  Plaintiff challenges those withholdings. Again, Plaintiff's arguments miss the mark.

As a threshold matter, Plaintiff claims that the withheld information is not subject to Exemption 7(E) because Plaintiff believes "the records do not contain any guidance, techniques, sources, and procedures for law enforcement *investigations or prosecutions*."  Pl. Memo. at 24 (emphasis in original).  Such an "overly restrictive" view has been rejected by courts within this Circuit:

> The D.C. Circuit has held that 'an agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation.' *Tax Analysts,* 294 F.3d at 79.  Even if withheld documents 'are not 'how-to' manuals for law-breakers, the exemption is broader than that.'  *See Mayer Brown,* 562 F.3d at 1192-93.  'Information that relates to law enforcement techniques, policies, and procedures is properly withheld under this exemption.' *Showing Animals Respect & Kindness v. U.S. Dep't of Interior,* 730 F. Supp. 2d 180, 199 (D.D.C. 2010) (citing *Boyd v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 570 F. Supp. 2d 156, 158 (D.D.C. 2008)).

*Gilman v. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 19 (D.D.C. 2014).

CBP, which is "undisputably a law enforcement agency," is entitled to deference "in its determination that the records were compiled for law enforcement purposes." *Id*. Further, "the assessment of border vulnerabilities is directly related to the potential violation of federal immigration laws and CBP's duty to deter illegal immigration and to apprehend illegal immigrants." *Id*. Therefore, the information concerning such matters was properly withheld by CBP.

Plaintiff argues that USACE is "a 'mixed-function' agency with both law enforcement and administrative functions," and claims there is "no 'rational nexus' between any investigation or any law enforcement duty of the agency" and the withheld information. Pl. Memo at 25. However, Plaintiff disregards the fact that it is CBP that has the relevant enforcement duties and, as explained in the Roberts Declaration, USACE consulted with CBP to review the documents and propose necessary redactions before USACE released them to Plaintiff. *See* Roberts Decl. ¶ 7. Nowhere does USACE claim it withheld material because of its own law enforcement activities. Rather, the 7(E) withholdings are unquestionably related to CBP's law enforcement activities.

For the reasons set forth in Defendants' initial memorandum, declarations, and *Vaughn* indices, with the exception of the material that was mistakenly withheld by CBP (*see* Second Howard Decl. ¶ 10), Defendants properly applied Exemption 7(E). As noted in the Second Howard Declaration:

> Plaintiff challenges the withholding of information pursuant to exemption (b)(7)(E) because it claims the records are unrelated to law enforcement purposes or any technique or procedure for law enforcement investigations or prosecutions. CBP is a law enforcement agency whose principal mission is to secure the nation's borders to facilitate legitimate travel and trade. The agency accomplishes this mission through the use of tactical infrastructure and surveillance technology located on and near the

northern and southern U.S. borders. As detailed in the agency's *Vaughn* index, the information withheld relates to existing and proposed tactical infrastructure in specific USBP sectors used to prevent or detect the illegal entry of people and illicit items into the U.S. Although certain maps, images, and other information regarding current and proposed infrastructure are publicly available (such as the interactive map noted by Plaintiff), that information, unlike the records at issue, does not include more granular information identifying the specific USBP sectors, design specifications, or operational assumptions about and conditions under which the infrastructure or technology is tested in assessing the agency's needs. Such information is not generally known to the public, and its disclosure would reveal the agency's approaches to, or techniques utilized in, effecting its border security mission, which can reasonably be expected to assist individuals in avoiding detection or implementing countermeasures to circumvent federal law. Where such information was contained in records prepared for law enforcement purposes, it was determined that exemption (b)(7)(E) applied. For the same reasons, to the extent the information was detailed in other records not directly related to law enforcement (such as environmental assessments), it was determined that exemption (b)(7)(E) applied.

Second Howard Decl. ¶ 9.

## CONCLUSION

For the reasons set forth in their initial motion papers and above, Defendants respectfully submit that their motion for summary judgment should be granted.

Dated: December 14, 2018                    Respectfully submitted,

                                            JESSIE K. LIU, D.C. Bar # 472845
                                            United States Attorney

                                            DANIEL F. VAN HORN, D.C. Bar # 924092
                                            Chief, Civil Division

                                     By:   /s/ *Melanie D. Hendry*
                                            Melanie D. Hendry
                                            Assistant United States Attorney
                                            555 Fourth Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-2510
                                            melanie.hendry2@usdoj.gov