UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CENTER FOR BIOLOGICAL DIVERSITY,

              Plaintiff,

        v.                           Civ. No. 17-1037 (EGS)

U.S. ARMY CORPS OF ENGINEERS, and
U.S. CUSTOMS AND BORDER PROTECTION,

              Defendants.

---

## MEMORANDUM OPINION

Plaintiff Center for Biological Diversity ("Center") brings this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking, among other things, disclosure of records withheld by Defendants U.S. Army Corps of Engineers ("Army Corps") and U.S. Customs and Border Protection ("CBP") (collectively "Defendants"). The withholdings are documents that were provided to President-elect Trump's Transition Team that concern then-candidate Trump's campaign promise to construct a wall along the United States' southern border.

Concerned for the biological diversity of the U.S.-Mexico Borderlands, particularly the allegedly imperiled wildlife species that currently reside there, the Center submitted a FOIA request to the Army Corps and CBP in an attempt to understand how the defendants advised the Presidential Transition Team on the border wall. In response to the FOIA request, defendants

produced over 5,000 documents with many records redacted or withheld pursuant to several FOIA exemptions.

The Center has challenged defendants' withholdings pursuant to the various claimed FOIA exemptions. Pending before the Court are the parties' cross-motions for summary judgment. Upon careful consideration of the parties' submissions, the applicable law, and the entire record herein, the Court **GRANTS** defendants' motion for summary judgment, and **DENIES** the plaintiff's cross-motion.

## I. Background

Unless otherwise noted, the following facts are taken from the Complaint, ECF No. 1, and from the parties' statements of undisputed material facts, *See* Defs.' Statement of Material Facts ("Defs.' SOMF"), ECF No. 21-1; Pl.'s Statement of Material Facts ("Pl.'s SOMF"), ECF No. 22-2.

This case involves a FOIA request by the Center to the United States Army Corps, in which the Center requested the following documents: "all records . . . that reference walls, barriers, and/or other physical constructions along the U.S.-Mexico border and/or U.S. Canada border, for purposes of the Presidential transition process, created for and/or provided to brief members of the Presidential Transition Team and/or their

representatives." Defs.' SOMF, ECF No. 21-1 at 1 ¶ 1.[1]  The
Center made the same request of the U.S. Department of Homeland
Security ("DHS"). Pl.'s SOMF, ECF No. 22-2 ¶ 5.

The Army Corps "produced . . . a total of 661 records . . .
in full or in part," and "with[eld] 152 pages of 'attachments'
in their entirety."[2]  Pl.'s SOMF, ECF No. 22-2 ¶¶ 18, 19. The
Army Corps withheld the information pursuant to FOIA Exemptions
5, 6, and 7(E). *Id.* ¶¶ 21–23. CBP released in whole or in part
"approximately 4,264 pages of responsive records." Howard Decl.,
ECF No. 21-2 ¶ 25. CBP withheld information pursuant to FOIA
Exemptions 4, 5, 6, 7(C) and 7(E). *Id.* DHS made a final
determination on the Center's FOIA request on May 30, 2017.
Pl.'s SOMF, ECF No. 22-2 ¶ 14. The Center appealed the decision
on July 3, 2017,*id.* ¶ 15, and DHS made a final determination on
the appeal on March 1, 2018, *id.* ¶ 16.

On May 31, 2017, the Center filed this action alleging that
defendants violated FOIA, Compl., ECF No. 1 at 9-15 ¶¶ 46-90, or
alternatively, the Administrative Procedure Act. *Id.* at 15-20 ¶¶

---

[1] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF header page number, not the
original page number of the filed document.
[2] Roberts determined that he "miscalculated the number of pages
of documents withheld in their entirety in the November 1, 2017
production" when he prepared the declaration. Defs.' Counter-
Statement of Disputed Facts, ECF No. 28-2 ¶ 8. He previously
reported that the Army Corps entirely withheld 695 pages of
attachments, partially released 88 pages of emails, and
partially released 573 pages of attachments. *Id.* at ¶ 7.

91-116. The Center "seeks declaratory relief establishing that defendants are in violation of FOIA, or alternatively APA", and "injunctive relief directing defendants to provide it with responsive records without any further delay." *Id.* ¶ 7.

On October 31, 2017, pursuant to a court-ordered schedule, Army Corps produced 661 pages of partially redacted records, including emails and attachments. *See* Declaration of Damon Roberts ("Roberts Decl."), ECF No. 21-3 ¶ 7. Army Corps redacted employee names and contact information from 30 records pursuant to Exemption 6, sections of 27 records in part or records in full pursuant to Exemption 5, and portions of 6 records containing photos, maps, and specific locations of fencing and infrastructure pursuant to Exemption 7(E). *See* Roberts Decl., ECF No. 21-3 ¶¶ 8, 10, 13, 15; *id.* at Ex. D.

CBP released 7 batches of records totaling 4,494 pages, with many records redacted or withheld pursuant to Exemptions 4, 5, 6, 7(C), and 7(E). Howard Decl., ECF No. 21-2 ¶ 25; *id.* at Ex. D. CBP redacted information from 7 records pursuant to Exemption 4, redacted or withheld 50 records pursuant to Exemption 5, redacted names and contact information from 68 records pursuant to Exemption 6, and redacted 92 records pursuant to Exemption 7(E). Howard Decl., ECF No. 21-2 ¶¶ 34-35, 42, 46, 52-55; *id.* at Ex. A.

Defendants filed a motion for summary judgment arguing that

they were entitled to relief because they "performed multiple
searches which were reasonably calculated to locate responsive
records," and "produced all non-exempt responsive records to
[the Center] after properly withholding only such information
that is subject to . . . FOIA Exemptions 4, 5, 6, and 7." Defs.'
Mot. Summ. J., ECF No. 21 at 3-4. In support of their motion,
the Army Corps submitted the declaration of Damon Roberts,
counsel responsible for processing FIOA requests at Army Corps
at the time. Roberts Decl., ECF No. 21-3 ¶ 2. CBP submitted the
declaration of Patrick Howard, Branch Chief within the FOIA
Division at CBP. Howard Decl., ECF No. 21-2 ¶ 1. The Army Corps
and CBP also submitted their respective *Vaughn* indices. Ex. D,
ECF No. 21-3 at 20; Ex. A, ECF No. 21-2 at 18. *See Vaughn v.
Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

The Center opposed defendants' motion and filed a cross-
motion for summary judgment challenging the withholdings to
certain pages of produced documents on the basis of Exemptions
4, 5, 6, and 7. Pl.'s Cross-Mot., ECF No. 22 at 11. The parties
have filed replies and the parties' motions are now ripe for
disposition.

## II. Standard of Review

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary
judgment should be granted if the moving party has shown that

there are no genuine issues of material fact and it is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex
Corp v. Catrett*, 477 U.S. 317, 325 (1986). In determining
whether a genuine issue of material fact exists, the court must
view all facts in the light most favorable to the non-moving
party. *See Mastushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 587 (1986). FOIA cases are typically and
appropriately decided on motions for summary judgment. *Gold
Anti-Trust Action Comm. Inc. v. Bd. Of Governors of Fed. Reserve
Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011)(citations omitted).
In ruling on cross-motions for summary judgment, the court shall
grant summary judgment only if one of the moving parties is
entitled to judgment as a matter of law upon material facts that
are not genuinely disputed. *Shays v. FEC,* 424 F. Supp. 2d 100,
109 (D.D.C. 2006).

### B. FOIA Exemptions

FOIA requires agencies to disclose all requested agency
records, unless one of nine statutory exemptions applies. 5
U.S.C. § 552 (a),(b). Congress enacted FOIA to "pierce the veil
of administrative secrecy and to open agency action to the light
of public scrutiny." *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C.
Cir. 2007)(*quoting Dep't of Air Force v. Rose*, 425 U.S. 352, 361
(1976)). Because disclosure rather than secrecy is the "dominant
objective of the Act," the statutory exemptions are "narrowly

construed." *See McKneely v. United States Dept. of Justice*, 2015
WL 5675515 at *2 (D.D.C. 2015) (internal citations omitted).

The government bears the burden of justifying
nondisclosure, either through declarations or an index of
information withheld. *See e.g., Consumers' Checkbook*, 554 F.3d
1046 at 1057 (D.C. Cir. 2009) and *Vaughn v. Rosen*, 484 F.2d 820
(D.C. Cir. 1973) (holding that an indexing system was necessary
in FOIA cases to "(1) assure that a party's right to information
is not submerged beneath governmental obfuscation and
mischaracterization, and (2) permit the Court system effectively
and efficiently to evaluate the factual nature of disputed
information.").

Agency affidavits and declarations must be "relatively
detailed and non-conclusory." *SafeCard Services v. SEC*, 926 F.2d
1197, 1200 (D.C. Cir. 1991)(internal quotation marks and
citation omitted). Such affidavits or declarations are accorded
"a presumption of good faith, which cannot be rebutted by purely
speculative claims about the existence and discoverability of
other documents." *Id.* Courts must conduct a *de novo* review of
the record and may grant summary judgment solely on the basis of
information provided by the department or agency in affidavits
or declarations that describe the documents and justifications
for nondisclosure with "reasonably specific detail." *Cause of
Action v. Federal Trade Com'n*, 961 F. Supp. 2d 142, 153 (D.D.C.

2013)(*quoting Military Audit Project v. Casey*, 656 F. 2d 724, 738 (D.C. Cir. 1981)).

## III. Analysis

Defendants initially withheld information pursuant to FOIA Exemptions 4, 5, 6, 7(C), and 7(E). The Center, however, has clarified that it "does not challenge the Army Corps' redactions of 'names and contact information of active duty and civilian [Department of Defense "(DoD)"] personnel,' or 'personal phone numbers and personal email addresses of DoD employees' pursuant to Exemption 6."[3] Pl.'s Cross-Mot., ECF No. 22 at 14 n.1 (quoting Roberts Decl., ECF No. 21-3 ¶¶ 12–13). Nor does the Center challenge "CBP's redactions of law enforcement officers' and contractors' names or contact information pursuant to Exemption 6 and Exemption 7(C)."[4] *Id.* (citing Howard Decl., ECF No. 21-2 ¶¶ 46, 49). The Center contested the withholding of certain information pursuant to Exemption 4, but in defendants' reply brief, CBP stated that it was releasing the contested

---

[3] FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[4] FOIA Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

information.[5] Defs.' Reply, ECF No. 27 at 2. Therefore, no disputes remain concerning CBP's Exemption 4 withholdings, or withholdings pursuant to Exemption 7(C) and Army Corps withholdings pursuant to Exemption 6.

Accordingly, the only disputed issues are both defendants' withholdings pursuant to Exemptions 5 and 7(E), and CBP's withholdings pursuant to Exemption 6, as to non-law enforcement and agency employees only. The Court first discusses the adequacy of defendants' search for records; and then discusses each claimed Exemption.

### A. Adequacy of the Search for Records

Under FOIA, an agency must conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The adequacy of an agency's search is measured by a standard of reasonableness " and is dependent upon the circumstances of the case." *Braun v. U.S. Postal Service*, 317 F. Supp. 3d 540, 547 (D.D.C. 2018). An agency has the burden to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested . . . ." *Oglesby*

---

[5] FOIA Exemption (b)4 exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(7)(C).

*v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)(citations omitted).

A court generally determines the adequacy of a search "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 137 (D.D.C. 2001) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)(internal quotations omitted)). "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary . . . to allow the district court to determine if the search was adequate in order to grant summary judgment." O*glesby*, 920 F.2d at 68.

The Center does not challenge the adequacy of the defendants' search. However the Court has an independent duty to determine whether the government has met its FOIA obligations. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007); *see also* 5 U.S.C. § 552(a)(3)(C)(stating agency "shall make reasonable efforts to search for the records"). After reviewing the declarations provided, the Court finds that the defendants have met the statutory requirement to perform a reasonable search. Army Corps explained that the following methods were used to carry out the search:

> [Mr. Steven Roberts], the Project Manager in USACE Headquarters responsible for working with Customs and Border Patrol . . .would have a copy of all responsive documents . . . . Mr. Roberts stored all of his documents related to the construction of a physical barrier in an electronic folder on his network drive. He stored all of his electronic correspondence related to the construction of a physical barrier in a specific Outlook folder.  Mr. Roberts searched [both folders and his physical papers] for all documents responsive to the FOIA request.  Mr. Roberts also searched his physical paper files or responsive documents.  On April 18, 2017, Mr. Roberts provided me all records within his possession related [to] the construction of a physical barrier along the U.S.-Mexico border.

Roberts Decl., ECF No. 21-3 ¶4. Additionally, the declaration avers that the Army Corps' IT personnel "electronically search[ed] the email account of [Army Corp's] Commanding General . . . for any emails that included the terms 'border wall' or 'border fence.' The IT search was undertaken to ensure all responsive emails to or from Army Corps leadership had been located and produced." *Id.* ¶ 6. The Army Corps' declaration sufficiently explains the type of searches conducted, the search terms used, and explains that all files likely to contain responsive materials were located and searched. *See Walston v. U.S. Dep't of Defense*, 238 F. Supp. 3d 57, 64 (D.D.C. 2017)(noting that "[i]t is 'necessary' that the declaration that [the agency] relies upon aver that 'all files likely to contain

responsive materials . . . were searched.'" (*quoting Oglesby*, 920 F.2d at 68)(emphasis in original)). Consequently, Army Corps' search was sufficient.

Regarding the methods used to carry out CBP's search, CBP determined that "the da[y] after the Presidential election until one month following the swearing in of President Trump," was the most likely "time [period] that any communications or drafts would have been prepared for the Presidential Transition Team. As such, this time period is reasonably calculated to locate the records requested by Plaintiff." Howard Decl., ECF No. 21-2 ¶ 21. CBP determined that "the offices most likely to have information responsive to the Request were the Office of Facilities and Asset Management ("OFAM"), U.S. Border Patrol ("USBP"), and the Policy Directorate ["OPD"]. . . ." Howard Decl., ECF No. 21-2 ¶ 16. The declaration provided the search terms that were used by each office to locate documents in electronic files. *Id.* at 6 ¶¶ 22-24. Therefore, CBP's declaration sufficiently explains the type of search and the search terms, and the files likely to contain responsive materials were searched. Consequently, CBP's search was sufficient. Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to the adequacy of the searches.

B. **FOIA Exemption 5**

FOIA's Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To qualify as exempt pursuant to Exemption 5, "a document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008)(internal quotation marks omitted and citation omitted). "[C]ourts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990)(quoting *Formaldehyde Institute v. Department of Health and Human Serv.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989) (internal quotation marks omitted). Defendants claim the deliberative process privilege and attorney-client privilege to

justify the withholdings pursuant to FOIA Exemption 5. The Court discusses each in turn.

### 1. Deliberative Process Privilege

Army Corps claims the deliberative process privilege for 17 documents. These documents are mostly emails, but also include draft documents, and communications between DoD personnel regarding the "infrastructure along our nation's borders." Roberts Decl., ECF No. 21-3 ¶¶ 9-10. CBP claims the privilege for 29 documents which contain information concerning the agency's approach to implement law enforcement measures along the U.S.-Mexico border under programs and initiatives, such as the Secure Border Initiative Network ("SBI*net*") (a concept for providing fencing, communications systems, sensors, and operators as an approach to surveillance along the southwest border), the Integrated Fixed Tower ("IFT") Program (a surveillance program utilizing fixed surveillance towers along the Arizona border), and the Aerostat surveillance system (aircraft which monitor air and ground movement along the border), as well as the agency's potential plans for construction of new tactical border infrastructure as directed by the President. Howard Decl., ECF No. 21-2 ¶ 42.

To fall within the scope of the deliberative-process privilege, withheld materials must be both "predecisional" and "deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537

(D.C. Cir. 1993). A communication is predecisional if "it was generated before the adoption of an agency policy" and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "Even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue[.]" *Id.* For a document to be deliberative it "must be a direct part of the deliberative-process in that it makes recommendations or express[es] opinions on legal or policy matters." *Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 112 (quoting *Vaughn*, 484 F.2d at 823-24)(internal quotation marks omitted). "The critical factor in determining whether the material is deliberative in nature is whether disclosure of the information would discourage candid discussion within the agency." *Id.* "In determining whether a document is predecisional, an agency does not necessarily have to point specifically to a final decision, but need only establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Id.* at 112 (quoting *Coastal States Gas Corp.*, 617 F.2d at 868). However, the deliberative process privilege is to be construed "as narrowly as consistent with efficient Government operation."

*United States v. Phillip Morris*, 218 F.R.D. 312, 315 (D.D.C. 2003)(internal quotation marks and citation omitted).

The Center challenges Army Corp's withholdings pursuant to Exemption 5 on several grounds. First, the Center argues that defendants fail to identify a policy decision at issue in the withheld records; rather, the Center argues, many of the records consist of factual information. Pl.'s Cross-Mot., ECF No. 22 at 23-27. Second, the Center argues that the withholdings are not predecisional because they appear to decide or explain decisions that have already been made. *Id.* at 27-28. Last, and related to its first argument, the Center argues that both defendants have failed to identify any deliberative process in the records. *Id.* at 28-29.

Army Corps has established that the withheld documents were a part of a deliberative process. Army Corps meets the inter- or intra-agency document prerequisite; the declaration avers that it withheld "communications between Department of Defense [ ] personnel," Roberts Decl., ECF No. 21-3 ¶ 10. As to the Center's argument that the information withheld is factual and therefore cannot be protected, "[i]n some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege." *Wolfe v. Dep't of Health and Human Serv.*, 839 F.2d 768, 774 (D.C. Cir. 1988). The Court of Appeals for the District of

Columbia Circuit ("D.C. Circuit") has explained that "the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)(citation omitted).

Similarly, CBP has established that the withheld documents were a part of a deliberative process. First, CBP meets the inter- or intra-agency document prerequisite; the declaration avers that it withheld "information concerning the agency's approach to implement law enforcement measures along the U.S.-Mexico border. . ., as well as the agency's potential plans for construction of new tactical border infrastructure as directed by President Trump." Howard Decl., ECF No. 21-2 ¶ 42. Second, CBP has shown that the information was predecisional and deliberative; CBP's declaration avers that "[t]he redacted information includes the qualitative and quantitative metrics across which USBP identified law enforcement capability gaps, the results of tests and analyses of alternatives for potential law enforcement strategies, and recommendations to CBP leadership to inform acquisition and other decisions concerning the deployment of law enforcement strategies." Howard Decl., ECF No. 21-2 ¶ 42. This explains how the document at issue was

created prior to the adoption of an agency policy. CBP's declaration further states how production would discourage discussions: "[d]isclosure of such information could reasonably be expected to affect the agency's decision-making process in effecting presidential policy." *Id*.

The Vaughn index provides detailed explanations regarding how the documents were created prior to the adoption of an agency policy, and how disclosure would discourage discussion within the agencies. *See, e.g.* Ex. D, ECF No. 21-3. To demonstrate that withheld documents played a part in the "give-and-take" of agency decisionmaking, the agency "must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Senate of the Commonwealth of P.R. v. DOJ*, 823 F.2d at 574, 585–86 (D.C. Cir. 1987)(citation omitted). Defendants have identified the deliberative process at issue in this case: Army Corp has identified its process of determining the appropriate "infrastructure along our nation's borders," and CBP has identified its process for "potential plans for construction of new tactical border infrastructure as directed by President Trump." Defs.' Reply, ECF No. 27 at 4–5. As a general rule, "an agency in possession of material it considers exempt from FOIA [must] provide the requestor with a description of each document being withheld, and an explanation of the reason for the agency's

18

nondisclosure." *Oglesby*, 79 F.3d at 1176. In this case, the
Vaughn indices have provided the Center descriptions of each
withheld document and explained the reasons for the
withholdings. Because defendants have shown that the
withholdings were predecisional and deliberative the Court
**GRANTS** defendants' motion for summary judgment as to FOIA
Exemption 5 withholdings on the basis of the deliberative
process privilege.

### 2. Attorney-Client Privilege

CBP relies on the attorney-client privilege justification
of Exemption 5 to partially withhold information provided to the
"United States Border Patrol ("USBP") from the CBP's Office of
Chief for the purpose of providing legal advice." Howard Decl.,
ECF No. 21-2 ¶ 44. "The attorney-client privilege protects
confidential communications from clients to their attorneys made
for the purpose of securing legal advice or services." *Tax
Analyst*, 117 F.3d at 618. "The privilege also protects
communications from attorneys to their clients if the
communications rest on confidential information obtained from
the client." *Id.* (internal quotation marks omitted). "In the
governmental context, the 'client' may be the agency and the
attorney may be an agency lawyer." *Id.* "[T]he privilege
'protects only those disclosures necessary to obtain informed
legal advice which might not have been made absent the

privilege.'" *Coastal State*, 617 F.2d at 862 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

The Center does not contest the applicability of the withholdings of information subject to the attorney-client privilege. *See generally* Pl.'s Cross-Mot., ECF No. 22 (contesting Exemption 5 on deliberative process basis, but failing to address attorney-client privilege justification). The Court deems this issue conceded. *See Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat arguments that the plaintiff failed to address as conceded." (citation and internal quotation marks omitted)).

The Court has an independent obligation to determine whether the government has met its FOIA obligations, however. *See Sussman*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). Having reviewed the CBP's declaration and the *Vaughn* indices, the Court finds that CBP has fulfilled its obligations with respect to this issue. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 65 (D.D.C. 2015) (explaining that there is "no question" that an exemption pursuant to the attorney-client privilege is proper when the exempted material "contains a communication between a[n] [agency] employee and

a[n] [agency] attorney seeking legal review and advice.").
Accordingly, defendants' motion for summary judgment on this
issue is **GRANTED**.

### C. FOIA Exemption 6

The Center seeks the names of non-law enforcement and
civilian agency employees, including the names of agency
biologists.[6] Pl.'s Cross-Mot., ECF No. 22 at 31. Defendants have
claimed FOIA Exemption 6 to withhold this information. *See*
Defs.' Reply, ECF No. 27 at 5. FOIA Exemption 6 exempts from
disclosure "personnel and medical files and similar files the
disclosure of which would constitute a clearly unwarranted
invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Exemption 6 permits withholding of information when two
requirements have been met. *See U.S. Dep't of State v.
Washington Post Co.*, 456 U.S. 595, 598 (1982). The first
requirement is that "the information must be contained in
personnel, medical or 'similar' files." *Id.* That requirement is
met in this case. The statutory formulation "similar files" is
understood broadly to include any "[g]overnment records on an
individual which can be identified as applying to that
individual." *Id.* at 602 (internal quotation marks omitted).

---

[6] Other than the names of non-law enforcement personnel, "the
Center does not dispute [d]efendants' redaction of contact
information from the records." Pl.'s Cross-Mot., ECF No. 22 at
31 n.4.

Thus, Exemption 6 permits exemption of "not just files, but also bits of personal information, such as names and addresses, the release of which would create[ ] a palpable threat to privacy." *Walston*, 238 F. Supp. 3d at 66 (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006)).

The second requirement is that "the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy." *See Washington Post Co.*, 456 U.S. at 598. To constitute a clearly unwarranted invasion of personal privacy, there must be a significant or substantial privacy interest. *See id.* A substantial privacy interest is one that is "more than *de minimis*." *Nat'l Assoc. of Retired Fed. Ems. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). This second requirement demands that a court "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999)(internal quotation marks omitted). The only relevant public interest in this balancing analysis is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 46 (internal quotation marks omitted).

In this case CBP, pursuant to Exemption 6, redacted names of low-level employees who appear on documents concerning the United States-Mexico border. ECF No. 27 at 5. The redacted documents largely consist of internal agency emails between CBP offices coordinating the collection of records in response to specific requests from the Presidential Transition Team. *Id.* The names were redacted pursuant to DHS guidance concerning the protection of personal information in light of "general threats against DHS employees stemming from the Government's actions surrounding immigration." Defs.' Reply, ECF No. 27 at 5-6. This information is the type that satisfies Exemption 6's first requirement since the "civilian federal employees have a right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives.'" *EPIC v. DHS*, 384 F. Supp. 2d 100, 116 (D.D.C. 2015)(citing *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)). Therefore the employees have a cognizable interest in keeping their names from being disclosed. *Id.*; *see also Judicial Watch v. Dep't of State*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012)("A substantial privacy interest exists in avoiding embarrassment, retaliation, or harassment and intense scrutiny by the media that would likely follow disclosure.").

Although a party must show that a threat is not merely speculative to justify its withholding pursuant to Exemption 6, *see EPIC*, 384 F. Supp. 2d at 116, defendants have explained in this case that the nature of their work and the subject-matter have led to credible threats. The defendants have explained that there has been an increase in general threats against DHS employees. ECF No. 27 at 6; Second Howard Decl., ECF No. 28-1 ¶ 8. Indeed a threat to privacy may be derived from the nature of an employment agency "that advocates for security measures that may be unpopular." *EPIC*, 384 F. Supp. 2d at 116. The standard for demonstrating a substantial privacy interest is not onerous, *see Horner*, 879 F.2d at 874 (substantial privacy interest is anything greater than de minimis ), and defendants have demonstrated that the privacy interest in the names of the lower level CBP employees in this case is more than de minimis.

The next step in an Exemption 6 analysis step is to balance the privacy interest with the public interest in disclosure. "In this balancing analysis, [plaintiff] bears the burden of establishing a legitimate public interest supporting disclosure which is in line with the core purpose of FOIA, to contribute to greater general understanding of agency practice and procedure." *Clemmons v. U.S. Army Crime Records Ctr.*, No. 05-2353, 2007 WL 1020827, at *5 (D.D.C. Mar. 30, 2007)(citing *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495,

(1994)). The Center has identified the public's interest in knowing if "CBP has adequately conveyed the U.S.-Mexico border wall's far-reaching and irreversible environmental harms to the Presidential Transition team, and if the employees who provided the information were qualified to do so." Pl.'s Reply, ECF No. 29 at 17.

The Court finds that the Center has identified an appropriate public interest. The level of expertise of the individuals providing information to the government related to environmental effects of the construction of the wall clearly falls under the ambit of information that "let[s] citizens know what their government is up to." *See Lepelletier*, 164 F.3d at 46. Defendants, however, have provided to plaintiffs the names of "higher ranking CBP officials . . . as the information bears more closely to the agency's actions." Second Howard Decl., ECF No. 27-1 ¶ 8. In light of the fact that the Center has the names of higher-ranking officials who provided information to the Transition team, the Center's claimed public interest in disclosure of the names of lower-level employees is diminished. The Court finds that, on balance, the lower-level employees' interest in avoiding harassment outweighs the interest of public disclosure which is moderated by the release of names of higher-ranking agency personnel. Therefore the Court concludes that defendants properly invoked Exemption 6 as to the names of the

lower-level federal employees included in the documents in dispute. Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to its withholdings pursuant to Exemption 6.

### D. FOIA Exemption 7(E)

FOIA Exemption 7(E) permits the withholding of information collected for law enforcement purposes if release of that information would:

> disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). The purpose of Exemption 7(E) is to prevent publication of information that would "train potential violators to evade the law or instruct them how to break the law," and to protect information that, if disclosed, "increase[s] the risks that a law will be violated or that past violators will escape legal consequences." *Mayer Brown v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). Exemption 7(E) sets a "relatively low bar" for an agency to justify withholding information" but the government must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011)(quoting *Mayor Brown*).

Under Exemption 7(E), the government must demonstrate: (1)

that the withheld information would disclose techniques;
procedures or guidelines for law enforcement investigations and
(2) that the disclosure would reasonably "risk circumvention of
the law." 5 U.S.C. § 552(b)(7)(E); *see also Blackwell*, 646 F.3d
at 41–42. If the agency's principal function is law enforcement,
courts are "more deferential" to the agency's claimed purpose
for the particular records. *See Tax Analysts*, 294 F.3d at 77. If
the agency has mixed law enforcement and administrative
functions, we will "scrutinize with some skepticism the
particular purpose claimed." *Id.*

As a preliminary matter, the Center argues that defendants
have failed to demonstrate that the records withheld pursuant to
Exemption 7(E) are in fact agency materials relating to
guidelines, techniques or procedures related to law enforcement
investigations and prosecutions. Pl.'s Cross-Mot. ECF No. 22 at
34. In response, CBP argues that "an agency may seek to block
the disclosure of internal agency materials relating to
guidelines, techniques, sources, and procedures for law
enforcement investigations and prosecutions, even when the
materials have not been compiled in the course of a specific
investigation." Defs.' Reply, ECF No. 27 at 7 (quoting *Gilman v.
DHS*, 32 F. Supp. 3d 1, 19 (D.D.C. 2014).

The Court is persuaded that defendants have the better
argument. In *Gilman*, the court found that "although the

information in the challenged records [were] not styled as formal guidelines or procedures for CBP officials, the records refer to information, including how CBP officials assess vulnerable areas along the border, that could be used to encourage decisions to violate the law or evade punishment." *Gilman*, 32 F. Supp. 3d at 19 (internal quotation marks and citation omitted)). This explanation was sufficient because the assessment of border vulnerabilities was directly related to protentional violations of federal immigration laws. *Id.* at 23. Similar to the explanation provided in *Gilman*, here, Army Corps' declaration explains that it redacted specific information related to security an infrastructure and that disclosing the information would reveal CBP's assessments of vulnerabilities along the U.S.-Mexico Border. *See* Roberts Decl., ECF No. 21-3 ¶ 15.

CBP's declaration sufficiently explains how information that would result in disclosure of law enforcement vulnerabilities is information related to law enforcement techniques, procedures, or guidelines. Howard Decl., ECF No. 21-2 ¶¶ 52-55. Additionally, CBP's second declaration asserts that "the information withheld relates to existing and proposed tactical infrastructure in specific USBP sectors used to prevent or detect the illegal entry of people and illicit items into the U.S." Second Howard Decl., ECF No. 27-1 ¶ 9. Information

relating to infrastructure used to prevent or detect illegal entry of items and people is information related to law enforcement techniques, procedures, or guidelines. *See Gilman*, 32 F. Supp. 3d at 23. These documents are sufficiently related to the enforcement techniques policies and procedures. *See id* at 19. (finding documents related to border vulnerabilities could be used in the same manner as a technique procedure or guideline and therefore was exempt).

### 1. Army Corps

The Army Corps has withheld six records pursuant to Exemption 7(E). These records include: (1) an Engineering and Construction Support Office ("ESCO") overview PowerPoint briefing--withheld in its entirety--discussing ECSO's structure, organization, capabilities, past support to CBP, and infrastructure assessment branch (Roberts Decl., Ex. D, at 2 (Doc. 4.1)); (2) a redacted slide show that CBP created to brief Army Corps' leadership about existing fencing along the U.S.-Mexico border and proposed new fencing locations (*id.* at 3 (Doc. 6.1)); (3) four attachments to the "Presidential Transition Narratives & Map" email, including a diagram of potential fence locations along the U.S.-Mexico border (*id.* at 4 (Doc. 11.2)); (4) nine maps of potential fence locations broken down by CBP sector (*id.* at 5 (Doc. 11.3)); (5) three maps of potential fence locations broken down by state (*id.* at 5 (Doc. 11.4)); and (6)

113 maps of potential fence locations at the county or town level (*id.* at 5 (Doc. 11.5)).

The Center argues that the records withheld have no "rational nexus" between any investigation or law enforcement duty of any agency. Pl.'s Cross-Mot., ECF No. 22 at 35. Specifically, the Center argues that because the enforcement duty lies with CBP, Army Corp does not have a law enforcement duty with which to create a rationale nexus. *Id.* at 36. Army Corps does not deny that its 7(E) withholdings are "unquestionably related to CBP's law enforcement activities." Defs.' Reply, ECF No. 27 at 8. However, Army Corps argues that this fact is not fatal to their claim because it is the nature of the information not the classification of the agency that governs whether the exception applies.

The Court finds that Army Corp has properly withheld the material pursuant to Exemption 7(E). In making this determination the Court is guided by the principle that Exemption 7(E) sets a "relatively low bar" for an agency to justify withholding information" and the touchstone of whether records were complied for law enforcement purposes is "how and under what circumstances the requested files were compiled." *Coleman v. Lappin*, 607 F. Supp. 2d 15, 23 (D.D.C. 2009).

As to the Center's first argument that there was no enforcement duty by the Army Corps in this case, and therefore

Army Corps cannot rely on this exemption, the Court finds that argument unpersuasive. Under the test of Exemption 7, although "the withheld record must have been compiled for law enforcement *purposes*; the withholding agency need not have statutory law enforcement *functions*." *Public Employees for Environmental Responsibility v. U.S. Section, International Boundary and Water Com'n, U.S.-Mexico*, 740 F.3d 195, 204 (D.C. Cir. 2014); *Elkins v. Federal Aviation Administration*, 99 F. Supp. 3d 90, 98 (D.D.C. 2015)(stating that in considering requirements pursuant to Exemption 7(E) "it is not the nature of the agency that controls, but the character of the records withheld"). In light of the statutory language, the task for this Court is to determine whether the records were compiled for law enforcement purposes not simply to determine the nature of the agency which compiled the records. *Elkins,* 99 F. Supp. 3d at 98*.*

The records claimed here easily meet that test. Army Corps seeks to withhold information pertaining to the number of border stations and border patrol agents among the U.S.-Mexico Border, the location and length of border patrol fencing, and proposed border patrol fencing. Army Corps consulted with CBP to review the documents and propose necessary redactions before it released the information to the plaintiffs. Roberts Decl., ECF No. 21-3. The information relating to infrastructure and used to prevent or detect illegal entry of people and items is clearly

information compiled for law enforcement purposes such that Exemption 7(E) applies. *See Pub. Employees for Envtl. Responsibility*, 740 F.3d at 203 (stating the "ordinary understanding of law enforcement includes . . . proactive steps designed to prevent criminal activity and to maintain security").[7]

### 2. CBP

CBP has redacted information pursuant to Exemption 7(E) related to contracts, infrastructure and project summaries; reports to policy makers; and environmental assessments; as well as information such as miles of fencing and roads; photos and maps of fencing and roads. *See, e.g.,* Howard Decl., ECF No. 21-2 Ex. A (0006-BW FOIA, 0007-BW FOIA, 0025-BW FOIA, 0026-BW FOIA, 0027-BW FOIA, 0037-BW FOIA, 0038-BW FOIA, 0039-BW FOIA, 0058-BW FOIA, 0064-BW FOIA, 0065-BW FOIA, 0073-BW FOIA, 0074-BW FOIA,

---

[7] The Center's argument that these documents are not law enforcement information but rather environmental information and therefore not eligible for protection under Exemption 7(E) also fails. As the D.C. Circuit has explained documents "which may have been compiled originally for architectural planning or internal purposes—may fall within Exemption 7 if that information is later compiled and given to law enforcement officers for security purposes." *See Pub. Employees for Envtl. Responsibility*, 740 F.3d at 203. Here, notwithstanding any other initial purpose for the withholdings, the information was compiled for security purpose.

0117-BW FOIA, 0118-BW FOIA, 0121-BW FOIA, 0122-BW FOIA, 0124-BW FOIA, 0125-BW FOIA).[8]

The Center argues that CBP failed to prove that the redacted records were compiled for law enforcement purposes because it "failed to describe with reasonable detail the technique or procedure at issue in each record; the context in which the technique or procedure is used; how the technique or procedure is used;[or] how the technique or procedure is generally known to the public." Pl.'s Cross-Mot., ECF No. 22 at 38. (internal quotation marks omitted). The Center also argues that "release of fence photos and maps that are publicly available does not risk circumvention of the law." Pl.'s Cross-Mot., ECF No. 22 at 39. CBP responds that the publicly released information that the Center referred to is different than the information that CBP withheld., which is generally not known to the public. Second Howard Decl., ECF No. 28-1 ¶ 9(stating that maps available to the public do not include information such as USBP sectors, design specifications, or operational assumptions).

The Court finds that CBP has established that it properly withheld documents pursuant to Exemption 7(E). First, CBP

---

[8] With the exception of two documents, 0010-BW FOIA and 0099-BW FOIA, all the documents CBP withheld under the deliberative process privilege were also withheld under Exemption 7(E).

established that the withheld documents were compiled for law enforcement purposes. Because CBP is an enforcement agency, it is entitled to deference in its determination that the records were compiled for a law enforcement purpose. *See Tax Analysts*, 294 F.3d at 77. The declaration avers that the "[r]edacted information includes technical specifications and locations of tactical infrastructure and related surveillance technology (including its capabilities and limitations . . .), and other similar information that directly relates to CBP's law enforcement mission." Howard Decl., ECF No. 21-2 ¶ 52.

CBP's declaration sufficiently explains how disclosure of the withheld information could risk circumvention of the law. The declaration avers that disclosure "could reveal law enforcement sensitive information that could reasonably be expected to permit individuals to effectuate countermeasures, alter their patterns of conduct to avoid deception, or otherwise circumvent the law." *Id.* CBP additionally avers that "[d]isclosure of CBP's asset investments along the southern border could reveal capability gaps that would permit individuals to effect countermeasures in order to circumvent the law," *Id.* at 15 ¶ 53; disclosure of the reimbursable work authorization "would reveal the level of tactical infrastructure investment made in these areas, which could reveal capability gaps that would permit individuals to . . . circumvent the law,"

*id.* at 15-16 ¶ 54; and disclosure of cost estimates "could reveal capability gaps that would permit individuals to  . . . circumvent the law." *Id.* at 16 ¶ 55; *see also Gilman*, 32 F. Supp. 3d at 19 (stating information related to "how CBP officials assess vulnerable areas along the border, that could be used to encourage decisions to violate the law or evade punishment." (internal quotation marks and citation omitted)). This information, if disclosed, has the potential to aid criminality.

Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to its withholdings pursuant to Exemption 7(E).

**E. Segregability**

FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are" otherwise exempt pursuant to the Act. 5 U.S.C. § 552(b). This rule of segregation applies to all FOIA exemptions. *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Before approving the application of a FOIA exemption, a district court must make "specific findings of

segregability" regarding the documents to be withheld. *Summers v. DOJ*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are "entitled to a presumption that they complied with their obligation to disclose" reasonably segregable material. *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007).

Army Corp's declaration avers that "[a]ll documents were processed to achieve maximum disclosure consistent with the provisions of FOIA [and] every effort was made to provide the Plaintiff will all releasable material and to reasonably segregate exempt information from releasable information." Roberts Decl., ECF No. 21-3 ¶ 16. CBP's declaration avers that "[a]ll information withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable because it is so intertwined with protected material that segregation is not possible, or its release would have revealed the underlying protected material." Howard Decl., ECF No. 21-2 ¶ 56.

Upon review of the Roberts and Howard declarations explaining the process for reasonably segregating non-exempt material, the Court is satisfied that the government only withheld information that is exempt from disclosure and material "inextricably intertwined with exempt portions." *See Mead Data Cent., Inc.*, 566 F.2d at 260. Both declarations "show with 'reasonable specificity' why the documents cannot be further

segregated." *Braun*, 317 F. Supp. 3d at 551. Accordingly, the Court finds that the DEA has discharged its obligation to ensure it has not withheld any segregable non-exempt materials.

**IV. Conclusion**

For the foregoing reasons the Court **GRANTS** defendants' motion for summary judgment, and **DENIES** the Center's cross-motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **September 27, 2019**